**SUPERIOR LLOYDS OF AMERICA v.
BOESCH LOAN CO.**

No. 14253.

Court of Civil Appeals of Texas.
Fort Worth.

June 27, 1941.

Rehearing Denied Sept. 12, 1941.

Earnest, Bondies & Flahive, of Dallas, for appellant.

Anderson & Kelly and Keith F. Kelly, all of Fort Worth, for appellee.

SPEER, Justice.

Boesch Loan Company, a corporation, sued Superior Lloyds of America, an insurance corporation, and A. L. Miller, in the County Court at Law No. 1, at Fort Worth, Texas, seeking recovery on an insurance policy covering an automobile destroyed by collision, and upon a note representing a part of the purchase money of the damaged car.

For convenience we shall refer to plaintiff as "Boesch", to defendant Superior Lloyds of America as "insurance company" or "insurer", and to defendant Miller by name.

This case was before us on a former appeal. We reversed a judgment in favor of Boesch against the insurance company because no proof of loss was given to the insurance company, a condition precedent provided for in the insurance contract. See Superior Lloyds of America v. Boesch Loan Co., 130 S.W.2d 1036.

Prior to the trial from which this appeal was perfected, plaintiff amended its pleadings and, in addition to other matters complained of, alleged a series of acts and conduct by the insurance company as constituting a waiver by that company of the right to demand proof of loss as provided in the policy.

Insofar as is necessary for us to state, the insurance company answered by general denial and special pleas, substantially that: (1) the policy contract sued on provided for proof of loss to contain certain information therein described should be furnished by the insured within a designated time, and that none was furnished; (2) the contract was violated because a lien was placed on the automobile without the consent of the company; and (3) because Miller, the insured, had accepted payment from the Frisco Railway Company for the loss sustained to the insured automobile, and had executed a release to said railway company for all damages sustained in the collision, in violation of the provisions of the contract of insurance, wherein the insurance company should be subrogated to all rights of the insured against a wrongdoer causing the loss.

Trial was had to the court without the intervention of a jury. Judgment was entered for plaintiff Boesch Loan Company against Superior Lloyds of America, from which judgment the latter has perfected this appeal.

By a proposition based upon an adequate assignment of error, the insurance company contends that recovery could not be had on the contract of insurance because no proof of loss was made by anyone, as required by the policy, and that the pleadings and evidence did not sustain a finding that it had waived such requirement.

The pleadings of plaintiff in this respect are lengthy and detail many of the facts relied upon to constitute the waiver and were sufficient basis for the testimony offered. The undisputed facts reveal that Miller and his wife, the owners of the automobile, were seriously injured when a collision took place between their car and a railway train in the City of Fort Worth; that they were taken to a hospital; but the extent of their injuries and the length of time they were unable to transact business pertaining to the accident are not disclosed, except that the accident happened on the night of October 18th, 1937, and Miller made settlement with the railway company on February 23rd, 1938. The policy of insurance was in effect at the time of the loss. The policy provided that the insured should give immediate notice to the insurance company of any loss sustained to the automobile, and further, as applicable to the point under consideration, that, "within 91 days after loss or damage for which claim is made, * * * the insured shall

render a statement to this company (insurer), signed and sworn to by the insured, stating the place, time and cause of the loss or damage, the interest of the insured and all others in the property, the sound value thereof and the amount of loss or damage thereto, all encumbrances thereon, and all other insurance, whether valid and/or collectible or not, covering such property * * *.''

■ Boesch was a beneficiary under the contract, because it held a note for part of the purchase money of the car and a lien thereon, and had previously notified the insurer of these facts and procured from the company a loss payable clause in its favor payable as its interest may appear. This loss payable clause was attached to and made a part of the policy. On October 20th, two days after the loss, Boesch wrote the insurance company, advising it of the loss, the time, place and manner of its occurrence, that Miller's condition was such that he could not give the notice, and advised where the salvage could be found. The insurance company's agents promptly began to investigate the loss and conferred with Boesch several times about the facts involved and plaintiff's president told the attorney, adjuster and all representatives of the insurer all he knew about the matters involved, including the settlement by Miller with the railway company. Boesch did not receive any part of the money received by Miller from the railway company, nor did it in any way participate in that settlement. No complaint was ever made by the insurance company that it did not have all the information that would have been in a proof of loss such as required by the policy. The claim adjuster for the insurance company, after several days of investigation, made recommendations to the company and did not know why payment had not been made. On February 23rd, and March 8th, 1938, Boesch wrote the insurer and insisted upon payment, and received a reply on March 9th, requesting that further dealing be had with its adjuster, Mr. Wehmeyer; that letter expressed a hope that Boesch would continue to negotiate with Mr. Wehmeyer.

■ We believe that the information given to the insurance company, though it was in piecemeal and not all in writing nor sworn to, was a substantial compliance with the proof of loss requirement in the policy. It does not appear that Boesch had any information beneficial to the rights of the insurer that was not disclosed to it. The insurance company acted upon that information in all matters involved and should not be permitted to defeat payment to Boesch, the mortgagee, solely because a literal compliance of the policy was not pursued. Service Mutual Insurance Company of Texas v. Territo, Tex.Civ.App., 147 S.W.2d 846. As a further evidence of the fact that both Boesch and the insurer were relying upon what had been done as a compliance with the requirements of the policy, the letter of the insurer of date March 9th, long after time had expired for proof of loss, urged Boesch to negotiate with its agent, Mr. Wehmeyer. The proposition complaining that no proof of loss was made and had not been waived is overruled.

■ The insurance company next presents a most interesting question. It is contended that because Boesch's "loss payable clause", attached to the policy, stipulated, "It is agreed that any loss or damage ascertained and proven to be due to the insured * * * shall be held payable to Boesch Loan Company as (its) interest may appear, subject however to all of the terms and conditions of this policy, which are made a part hereof," Boesch's right of recovery in this case depended upon the right of Miller to maintain an action on the policy. It is contended that because the policy provided that the insurer should be subrogated to the rights of the insured against any wrongdoer (the railway company in this case) and Miller had made settlement with the railway company and deprived the insurer of its rights to subrogation, and thereby forfeited his (Miller's) right to sue on the insurance policy, Boesch's rights were also precluded. We think the proposition unsound. We have been unable to find where the courts of this state have passed on the precise point. As we view the situation presented here, if Miller had forfeited his rights under the policy prior to the date of the loss, then Boesch would likewise be precluded from claiming rights under the forfeited contract. But in a case like this, where the policy was in full force and effect at the time the loss occurred, the rights of both the insured and Boesch, the mortgagee, were fixed, and Boesch's rights thereunder could not be taken away by the acts of Miller alone, after the loss occurred. There

can be but little question but that Miller could, and he perhaps did in this case, forfeit his right of recovery on the policy by making settlement with the railway company and thereby depriving the insurance company of its right of subrogation. Maryland Motor Car Ins. Co. v. Haggard, Tex.Civ.App., 168 S.W. 1011. These acts by Miller, not ratified or participated in by Boesch, would not destroy the fixed interest Boesch had in the policy after loss, by virtue of his loss payable clause. In a well considered opinion by the Kentucky Court of Appeals, styled Remedial System of Loaning v. New Hampshire Fire Ins. Co., 227 Ky. 652, 13 S.W.2d 1005, the point here under discussion was before the court. We concur in what is there said, and refer also to the authorities there cited from other jurisdictions in support of our conclusions.

■ The "loss payable clause" to Boesch, issued by the insurance company, was sufficient to refute the insurer's contention that the policy was voided because a lien was placed on the damaged automobile without its knowledge and consent, as provided in the policy. Moreover it is undisputed that the policy contained a loss payable clause in favor of Motor Investment Company, a previous owner of the same indebtedness owned by Boesch at the time of the loss.

■■ By another proposition, it is contended by the insurance company that Boesch's loss payable clause attached to the policy was ineffective because it was issued by the company after the loss had occurred. The contention must be overruled, since the record does not affirmatively show this to be a fact, and for the further reason there was no pleading by the insurer that the instrument was procured through fraud or mutual mistake of the facts then existing. The evidence shows that after several days of negotiations between Boesch and the Motor Investment Co., of Dallas, Boesch purchased the note held by Motor Investment Co., representing a part of the purchase money of Miller's car, along with the mortgage securing the debt, and was to receive the insurance policy along with the note and mortgage. All were received by Boesch on October 18th, 1937, and it was found that no "loss payable clause" to Boesch had been attached to the policy. On the day the papers were received, Mr. Boesch wrote the agents of the insurance company in Dallas to issue the "loss payable" rider providing for payment of loss to Boesch as its interest may appear, and sent it by registered mail, during office hours, on October 18th. The rider was issued and returned to Boesch containing the provision that it should be effective from 12:01 o'clock A.M. of October 18th, 1937. Mr. Boesch testified that he received the loss payable clause rider back from Earnest & Co. (claimed to be the agents of the insurer) "between the 18th and 20th of October, 1937". The loss occurred on the night of the 18th. Neither Boesch nor the insurer knew of the loss until the 20th of October, and that is the date on which Boesch wrote the insurance company of the collision, as mentioned above by us. There is a contention made by the insurer, in this connection, that Earnest & Co. had no authority from the insurance company to issue any contract for it, covering a loss that had already occurred. But the act of Earnest & Co. in issuing the instrument was clearly within the scope of their agency, and absent knowledge by Boesch to the contrary, or knowledge of the loss at the time it was accepted and acted upon, the insurance company could not repudiate it.

■ No error is shown by the admission in evidence of a letter written by counsel for the insurance company to the company's adjuster, in which it was stated that the company had issued its policy of insurance on the car involved in the collision with loss payable clause to Boesch Loan Company. It constituted an admission by the representative of the insurance company, of some of the things contended for by Boesch in the law suit.

■ The final proposition relied upon for reversal by the insurance company is in effect that the judgment is excessive, in that the court should have deducted $50 provided for in the policy, from the stipulated value of the automobile, and $15 for the agreed value of the salvage from Boesch's debt, and from the remaining sum deduct the $250 received by Miller from the railway company, and if Boesch could recover for any sum at all, it could not exceed the sum remaining unpaid after the above claimed deductions were made. The remainder is claimed by the insurer to be $65. From what we have said, above, re-

lating to Miller's acts in settling with the railway company after the loss occurred, Boesch's rights were not affected thereby, and the amount received by Miller should not have been deducted from Boesch's recovery.

The trial court entered judgment in favor of Boesch Loan Company for $329.36, and we have some doubt that the amount is as much as it should have been, but no complaint is made by Boesch of the amount of the judgment and it becomes unnecessary for us to further discuss that phase of it.

No reversible error is presented by the record and the judgment should be affirmed. It is accordingly so ordered.