MOSSLER ACCEPTANCE CO. *v.* MOORE.

Nov. 16, 1953

No. 38915 43 Adv. S. 22 67 So. 2d 868

758

*Clay B. Tucker,* Woodville, for appellant.

*Maxwell Bramlette,* Woodville, for appellee.

ETHRIDGE, J.

Appellant Mossler Acceptance Company, doing business as Allen-Parker Company, and hereinafter so called, filed this suit in the Chancery Court of Wilkinson County against appellee Dr. T. M. Moore, Administrator of the Estate of Carlos Moore, deceased. Its purpose was to impose a lien of $225 upon the salvage value of an otherwise destroyed automobile which had been mortgaged to secure a note to appellant, and to recover $887.31, the amount of the damage to the mortgaged car, on the theory of conversion of that amount by appellee settling the claim of the estate against alleged third party tort-feasors. The claim against the estate, insofar as it was represented by decedent's note, was not probated within the statutory six months. The chancery court allowed a conditional recovery only of the salvage value of the mortgaged automobile.

Carlos Moore, an adult citizen of Woodville, Wilkinson County, Mississippi, was killed on December 20, 1950, in Baton Rouge, Louisiana, as a result of a collision between his automobile and a truck driven by Wilbur Laird and owned by Wax Lumber Company, of Woodville, Mississippi. About six months before that, on June 9, 1950, Moore borrowed from appellant $1,410, evidenced by a promissory note, and secured by a chattel mortgage on a 1949 Ford Sedan, which was the automobile in which he was riding at the time of his death. The mortgage required collision and other insurance covering the automobile with a loss-payable clause in favor of appellant. Carlos Moore purchased such a policy from Fire and Casualty Insurance Company of Connecticut (here re-

ferred to as Fire and Casualty), with a loss payable clause which provided:

"Loss or damage, if any, under the Policy designated above shall be payable to ALLEN-PARKER COMPANY, Baton Rouge, Louisiana, as provided in such Policy and this insurance as to the interest of the . . . Mortgagee (hereinafter called the Lienholder) shall not be invalidated by any act or neglect of the . . . Mortgagor or Owner of within described Automobile nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the . . . Mortgagor . . . in possession of the property insured under a . . . mortgage or other encumbrance is not covered under such Policy, unless specifically insured against and premium paid therefor; and provided, also, that in case the . . . Mortgagor or Owner shall neglect to pay any premium due under such Policy the Lienholder shall, on demand, pay the same . . .

"Whenever the Company shall pay the Lienholder any sum for loss or damage under such Policy and shall claim that, as to the . . . Mortgagor or Owner, no liability therefore existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may at its option, pay to the lienholder the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the lienholder to recover the full amount of its claim . . ."

After the death of Carlos Moore, T. D. Moore, brother of appellee administrator and acting for him, and Crawford and Company (hereinafter referred to as Crawford), representative of Fire and Casualty Insurance Company, agreed that Fire and Casualty would pay

under its policy $887.31 as damages to the vehicle of deceased. Appellant agreed to accept that amount as payment in full by appellee, if appellee would endorse the draft and if it was paid. At the time of Carlos Moore's death, $940 was due on his promissory note. A draft dated March 27, 1951, was obtained on Fire and Casualty for $887.31, which appellant and appellee administrator both endorsed as payees. This draft was sent to Fire and Casualty's office in Connecticut and was returned unpaid marked ''claim in dispute.''

On March 23, 1951, a day or so before this draft was received by the drawee, Fire and Casualty, appellee administrator and all of the heirs of the deceased, including his mother, brother, and sisters, made a settlement with Wax Lumber Company, owner of the truck with which deceased's automobile collided, and with Walter Laird, driver of the truck. This settlement, in consideration of the payment by Wax Lumber Company and Laird of $14,500, released them from all damages to the person and for the death of Carlos Moore and from property damages. Hartford Accident and Indemnity Company was the liability insurer of Wax Lumber Company and Laird, and paid for their insureds the stated sum of money to the appellee and heirs of Carlos Moore, deceased. After this release and settlement of March 23, 1951, came to the attention of Fire and Casualty, that company refused to accept the draft upon it dated March 27, 1951, payable to appellee and appellant, under its collision policy.

Appellee administrator had previously executed under the collision policy a proof of loss of the car, and transmitted it to Crawford, representing Fire and Casualty. On March 22, 1951, Crawford mailed this proof of loss to Fire and Casualty, and on that same day notified Hartford Accident and Indemnity Company of the settlement which Fire and Casualty was making on its collision policy with appellant and appellee, and that it expected

reimbursement by Hartford. The draft on Fire and Casualty, dated March 27, 1951, was returned unpaid on May 10, 1951. On March 24, 1951, Crawford received from Hartford a letter dated March 22nd, stating that Hartford had settled all of the estate's claim against the Wax Lumber Company and Laird, and that it had obtained a release in full of all property and personal injury damages; hence Hartford advised that it did not owe Fire and Casualty anything.

Under these circumstances Fire and Casualty advised appellant and appellee that it did not consider that it was liable under its collision policy on the car of Carlos Moore, since appellee administrator and the heirs had released the alleged third-party tort-feasors of any liability for property damage to the car, and therefore, Fire and Casualty thought, had eliminated any subrogation right which Fire and Casualty might have against Wax Lumber Company and Laird if Fire and Casualty should pay off its claim under its collision policy.

On June 14, 1951, appellant made demand upon the attorney for appellee administrator and the heirs to pay the debt of Carlos Moore, deceased, to appellant. On July 17, 1951, appellee advised appellant that the estate did not consider itself liable, and that he felt that appellant should proceed against the insurer, Fire and Casualty.

Notice to creditors of the estate of Carlos Moore, deceased, was duly published on January 12, 19, 26 and February 2, 1951. Under Code Section 569, a claim on the note against the estate was required to be probated within six months from the first date of publication of notice to creditors, which was January 12, 1951. The statutory period for probate of such claims did not expire until July 12, 1951. Appellee executed the release to Wax Lumber Company and Laird on March 23. Fire and Casualty refused payment of its draft on May 10. Both of

these dates were well within the statutory period for appellant to probate its claim on the note.

On October 11, 1951, appellant Allen-Parker Company filed the present bill of complaint in the Chancery Court of Wilkinson County. The theory of the bill is not entirely clear. Fire and Casualty was not made a defendant. Dr. Moore, the administrator, is the only defendant. The bill charged that upon release by the defendant of the alleged tort-feasors, Wax Lumber Company and Laird, the defendant was made liable to complainant for the recovery of the value of the automobile, $887.31, being the damage done, plus $225, being the salvage value, a total of $1,112.31. The bill charged that defendant refused to pay complainant the value of the damage to the car received by defendant from Hartford and the alleged tort-feasors under the settlement; that complainant should recover the value of the automobile at the time it was destroyed; and that the court should construe the release executed by defendant as covering and including property damage.

The Chancery Court held that $225 was the salvage value of the car, which is held by defendant in trust for the benefit of the complainant, "to be paid only after all legal remedies have been exhausted, and the court retains jurisdiction of this salvage for this matter"; and that the note was not probated within six months and that the probate is barred by the statute of limitations. Hence the decree ordered that appellant recover from appellee $225, the salvage value of the car which was received by appellee, and directed appellee to pay that sum to appellant "when all legal remedies against the Fire and Casualty Insurance Company of Connecticut are exhausted and if the same is insufficient." The trial court denied any other relief.

██ ■ The final decree is manifestly correct in its holding that appellant has no claim against appellee on the promissory note of Carlos Moore, deceased, because that

claim was not probated within six months after the first publication of notice to creditors, as required by Code 1942, Section 569, and in fact was not probated at all. Code Section 571 expressly provides that the administrator "shall not pay any claim against the deceased, unless the same has been probated, allowed and registered."

Code Section 576 provides: "A creditor of a decedent who has a lien of any kind on property of the decedent shall not be barred of his right to enforce the lien against the property by a failure to present his claim and have it probated and registered, but shall be barred of all claim to be satisfied out of the assets not affected by such lien; . . ."

In other words, under these statutes appellant, having failed to probate its claim on the note of deceased within the statutory six months, is barred from asserting any such claim on the note as an unsecured creditor. Section 576, however, permits appellant to assert its lien or mortgage on the property, the automobile, placed in said mortgage as collateral, without probating such claim. That in part is what appellant is seeking here. Appellant seeks to impose its lien upon the salvage value of the automobile, which is stipulated to be $225, received by appellee from the person buying the damaged car. The final decree gave appellant a judgment for that amount, and to that extent is affirmed. However, that decree erroneously conditioned the $225 judgment against appellee upon appellant first exhausting its legal remedies against Fire and Casualty Insurance Company. There is no basis for that condition, since appellant's mortgage contained no such contingency, and the decree is modified by striking out that condition.

Appellant also says that it is entitled to recover from appellee an additional $887.31, which is stipulated to be the amount of the damage caused to the mortgaged car by the collision. Code Section 576, which permits a creditor to enforce his lien against mortgaged property with-

out probating his claim, provides that failure to probate the claim bars the creditor "of all claim to be satisfied out of the assets not affected by such lien." To avoid this and the other quoted statutory restrictions, appellant argues that it is seeking here to enforce a right of action for conversion by appellee of the mortgaged property. ■■■ Section 569, establishing a six months period for probate of claims, applies only to contractual claims and not to those in tort. Hancock v. Pyle, 191 Miss. 546, 3 So. 2d 851 (1941). Appellant contends that appellee has in his hands the mortgaged property, which consisted of $225 salvage value, and $887.31, being the settlement for property damage received by appellee from Wax Lumber Company, Laird and Hartford; that the damage done to the automobile is as much a part of the car after the wreck as is its salvage value; that it can sue for conversion by appellee of the proceeds paid by the alleged tortfeasors for damage; that by appellee executing the release and recovering in that settlement $887.31 for property damage, the collision insurer, Fire and Casualty, was relieved from again paying the value of the car to appellant, and these acts by appellee constituted a conversion of the property damages paid by Hartford.

We cannot see how any action for a conversion exists under these facts. 53 Am. Jur., Trover and Conversion, Section 24, pages 819-820, states: "A conversion is frequently defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his title or rights therein, or in derogation, exclusion, or defiance of such title or rights. A conversion takes place where a person does such acts in reference to the personal property of another as amount, in view of the law, to the appropriation of the property to himself. Indeed, the general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property."

Appellee has not wrongfully exerted any distinct act of dominion over any tangible personal property in which appellant owned an interest, except as to the salvaged car. The only property belonging to appellee's intestate in which appellant had any property interest was the mortgaged car. That vehicle was not wrongfully converted by Carlos Moore or by appellee, except as to what was left of it after the wreck, its salvaged value, for which appellant is entitled to a judgment. The car was substantially destroyed in a collision with the truck. And to that extent, namely, the part destroyed, the res serving as the basis of appellant's mortgage was eliminated. And of course there is no evidence indicating that this destruction was by the willful act of Carlos Moore. Nor is there any evidence in this record of negligence by Wax Lumber Company or Laird, except such as might be implied from the settlement, which stated that it constituted no admission of liability. Hence that res, in which appellant had its mortgage, was not converted by either the deceased or appellee.

 The settlement by appellee with the alleged tortfeasors did not constitute a wrongful conversion of any tangible personal property belonging to appellant. Conversion lies only for personal property which is tangible. 53 Am. Jur., Trover and Conversion, Section 4. Hence it is said that ''An action will not lie for the conversion of a mere debt or chose in action. Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.'' Ibid., Section 5. Appellant is a mortgagee, and although it might have an action against the alleged tort-feasors for destruction of its lien rights in the car, 36 Am. Jur., Mortgages, Sections 356, 1054, appellee also had a right of action against them, which appellee settled by the compromise and release. This release by appellee did not constitute an actionable tort

against any right of appellant mortgagee. For the reasons stated, it is not conversion. Nor can appellant assert any trust in the settlement funds, since such funds represent money accruing to appellee from the compromise of a claim of the estate against Wax Lumber Company and Laird, which is wholly independent of any rights of the mortgagee against them, and in which appellant has no interest.

Moreover, appellant has a clear remedy which it has failed to use under its insurance contract as mortgagee. The policy expressly provides that it "shall not be invalidated by any act or neglect of the . . . mortgagor or owner." The exception following that statement does not apply here. In Sargent v. Firemen's Ins. Co. of Newark, 89 N. H. 171, 195 Atl. 346 (1937), the mortgagor of a truck settled his claim with the third-party tort-feasors. The mortgagee sued the collision insurer under his loss payable clause, and holding for plaintiff, the court said that the mortgagor's settlement with the tort-feasors did not relieve the collision insurer from its obligation to the mortgagee. To the same effect are Superior Lloyds of America v. Boesch Loan Co., 153 S. W. 2d 973 (Tex. Civ. App. 1941); Remedial System of Loaning v. New Hampshire Fire Ins. Co., 227 Ky. 652, 13 S. W. 2d 1005 (1929). In all three of these cases a collision insurer defended on the ground that the insured had settled with a third-party tort-feasor and had thereby released it from liability to mortgagee, because the insurer had been deprived of any subrogation rights against the tort-feasors. And in each of them it was held that the mortgagee had an independent contract with the collision insurer, and that the insured mortgagor could not defeat the mortgagee's rights under its contract by settling with the tort-feasor. It may be that Fire and Casualty would have an action against appellee for depriving it of any subrogation rights. Annotation 105 A. L. R. 1426, 1433. We do not pass on that issue, since it

is not before us. But appellant had an enforceable right under the loss payable clause in the collision policy, and appellee's settlement with Hartford, et al. did not avoid that. It also had the right to probate its note within the proper time against the estate. But appellant failed to protect its interest by pursuing either of these privileges. Its omission in these respects cannot now be made the basis of a suit for conversion by appellee of a non-existent property interest of appellant.

The chancery court reached the correct result for partially erroneous reasons. Hence the decree appealed from is affirmed as modified: Appellant's judgment for $225 salvage value of the mortgaged car is not subject to the condition stated in that decree.

Affirmed as modified.

*McGehee, C. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.