ANDREW J. MURPHY, SR., Chairman, EDWARD C. CROW, and HARRY P. DRISLER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, Appellants, v. DONIPHAN TELEPHONE COMPANY, a Corporation.—147 S. W. (2d) 616.

Division One, February 14, 1941.

374

*Harry G. Waltner, Jr.,* and *Edward D. Summers* for appellants.

*Chas. B. Butler* for respondent.

DALTON, C.—This is an action to recover "contributions" alleged to be due under the provisions of our Unemployment Compensation Act. [Laws 1937, p. 574 et seq., amended 1939, Laws 1939, p. 892 et seq., Mo. Stat. Ann., sec. 13194, sec. 1 et seq., p. 4770.] Upon a trial before the court, without the aid of a jury, a judgment was entered for the defendant and plaintiffs have appealed.

We have jurisdiction by reason of the fact that appellants are state officers within the meaning of Section 12, Article 6 of the Constitution. [Murphy, Sr., v. Hurlbut Undertaking & Embalming Co., 346 Mo. 405, 142 S. W. (2d) 449, 450.]

It is conceded by respondent's brief that the respondent and one Dee A. Rice, hereinafter mentioned, were, at all times mentioned in the petition, "employing units" within the meaning of paragraph (g) of Section 3, of our Unemployment Compensation Act. [Laws 1937, p. 575, amended Laws 1939, p. 888, Mo. Stat. Ann., sec. 13194, sec. 3 (g), p. 4770.] It is conceded that neither respondent nor Rice was an "employer" within the meaning of subdivision (1), paragraph (h) of Section 3 of the act, because neither, considered alone, had eight or more employees, as provided in the act. [Laws 1937, p. 575, amended Laws 1939, p. 889.]

Appellants contend that the sole question presented is whether or not respondent is an "employer" within the meaning of subdivision 4, paragraph (h) of Section 3, of the act, Laws 1937, p. 576, amended Laws 1939, p. 888, which further defines an "employer" as "Any employing unit which, together with one or more employing units, is owned or controlled by legally enforceable means or otherwise, directly or indirectly, by the same interests, or which owns or controls one or more other employing units by legally enforceable means or otherwise, and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection."

Respondent did not demur to the petition, nor to any count thereof, but answered, denying generally the allegations in the petition. On trial appellants offered evidence in support of the several counts of

the petition.   Appellants called Dee A. Rice, respondent's president, as their witness.   His testimony tended to show that respondent was a Missouri corporation owning and operating a telephone system in Ripley County; that, of the 500 outstanding shares of capital and voting stock of respondent corporation, Dee A. Rice owned 449 shares; that the wife and father of Dee A. Rice owned the remaining 51 shares; that Dee A. Rice was employed by respondent as its president and general manager; that he was actually managing the affairs of the company; that respondent, at all times mentioned in the petition, had seven individuals in its employment; that Dee A. Rice individually owned, operated and managed a telephone system in Wayne County under the trade name of Wayne County Telephone Company; that Dee A. Rice in such capacity employed six persons during the period mentioned in the petition; that respondent, and the wife and father of Dee A. Rice, had no interest in the Wayne County Telephone Company; that the funds of the two companies were kept in separate accounts and the books, business and affairs of each were totally separate and apart from the other; that the Public Service Commission of Missouri would not permit Dee A. Rice to consolidate respondent's business with his own; that neither Dee A. Rice nor the respondent had elected to come under the provisions of the Unemployment Compensation Act; that, except as to Dee A. Rice, the employees of the respective companies were not the same; and that the companies had no connection whatever, except that Dee A. Rice owned stock in respondent, as hereinbefore mentioned, and was the president, a director, and the general manager of respondent and, also, individually owned, managed and operated the Wayne County Telephone Company.

Appellants submitted to witness Rice an exhibit purporting to show the amount of wages paid by respondent to its employees during 1937, the several quarters of 1938, and the first quarter of 1939, being the periods covered by the several counts of the petition.   Witness stated: ''I have read plaintiff's exhibit '1' over hurriedly and I think the facts stated there are substantially correct, but I can't say that they are unless I would compare them with my records .  .  .   I can't tell you as to whether or not the amounts of the payrolls set out in plaintiff's exhibit 1 are correct or not.  .  .  .  I can't say positively that they are correct.  .  .  .

''I was present when field adviser L. F. Monnig prepared a report, and I assume that plaintiff's exhibit 2 which purports to be '·Employer's Summary Contribution Report for the year 1937' is it.   I gave Mr. Monnig some figures from the records I have and the figures contained on this report are probably the figures I gave him.  .  .  . I gave him some figures there that he asked for.''

Plaintiff's exhibits 2 and 3 were subsequently identified by appellants' witness Meyer as records kept in the ordinary course of

business of the Commission. These exhibits were signed by Mr. Monnig, who was not a witness. Witness Meyer stated that they were made up by Mr. Monnig; that he heard Mr. Monnig ask Mr. Rice which employees were at Doniphan and which at Neelyville; that the figures came from the Social Security figures; that the witness did not examine the payroll books. This witness further stated: "I can't say whether the copies of the Social Security Reports from which these figures were taken had his signature on them or not. He gave them to us and told us they were the Social Security returns and represented his payroll." Over respondent's objection these exhibits were admitted in evidence. From the amount of the payrolls as disclosed by the several exhibits, the amounts of the contributions sought to be recovered would have to be determined on a percentage basis as provided by the act.

At the close of the evidence, respondent made no request for declarations of law in the nature of demurrers to the evidence. No requests for findings of fact or declarations of law were made by either party, and none were given. The court did not indicate the ground upon which it found for the defendant on the several counts. Under such circumstances, the judgment would ordinarily have to be affirmed, if it could be sustained on any reasonable theory and if no errors appeared on the face of the record proper. [Stoepler v. Silberberg, 220 Mo. 258, 119 S. W. 418; Zeitinger v. Hargadine-McKittrick Dry Goods Co.; 298 Mo. 461, 250 S. W. 913, 917; Railsback v. Bowers (Mo.), 257 S. W. 119, 121.] The appellants had the burden of proof and the court, sitting as a jury, was not required to believe the testimony of appellants' witnesses, even if their testimony was not impeached or contradicted. [Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621, 623-624; Gannon v. Gas Co., 145 Mo. 502, 516-518, 46 S. W. 968, 972; St. Louis-San Francisco Ry. Co. v. Dillard, 328 Mo. 1154, 43 S. W. (2d) 1034, 1036.]

To avoid this result, appellants contend in their statement that "the facts are not in dispute." Appellants' statement reviews the evidence generally, but not the evidence as to the amount of payrolls, and then sets out the amount of the "contributions" claimed in the various counts of the petition. The amounts claimed, being certain percentages (as provided by the act) of the alleged wages paid by respondent to its employees during the respective periods covered by the several counts of the petition. Respondent's statement says: "Respondent adopts the statement of the appellants insofar as it covers this case, except the amounts due from respondent to appellants, if any. The evidence does not show any definite amount due appellants if they are entitled to recover." In its brief and argument respondent does concede other facts and takes the position that it is not an employer within the meaning of the act. Respondent expressly concedes that both respondent and Dee A. Rice were "em-

ploying units'' as defined in the act. Assuming from these statements that respondent does concede all other evidentiary facts in the record, we are unable to find where respondent has, at any time, conceded that the alleged payroll figures, as presented by appellant, are in fact correct. The proposed stipulation of facts, plaintiff's exhibit 1, containing the alleged payroll figures for the various periods, was not signed by respondent. By cross-examination of appellants' witness Rice, respondent showed that he could not say that the amounts indicated in the exhibit were correct. By cross-examination of appellants' witness Meyer, respondent showed that Meyer had not examined the payroll books. Meyer's testimony amounted only to a statement that witness Rice at some time previous to the trial gave witness and Mr. Monnig the figures contained in exhibits 1, 2 and 3 and told them that the figures were taken from the Social Security returns and represented the payrolls. Although witness Rice, offered by appellants, was respondent's president and although he said, ''I think those reports are *probably* correct'' (Italics ours), still respondent was not bound to accept said figures as correct and it has not done so. Respondent was represented by counsel and counsel did not concede that the figures were correct. The matter was in issue under the pleadings and respondent offered no evidence.

Under the circumstances shown by the record, the court was not required to accept these figures as correct and from its finding we must infer that it did not accept them as correct. However, it would not necessarily follow that the judgment should be affirmed in view of the conceded fact that respondent had employees and paid them during the entire period. We think respondent's brief and argument, considered as a whole, concedes that, at all times mentioned in the petition, respondent was an employing unit having seven employees; that Dee A. Rice was an employing unit having six employees; that the employees of both were paid from the funds of their respective employers during said periods; and that all other evidentiary facts testified to are true, except as to the amount of the payrolls and the amount of the tax, if any.

We must consider the effect of these admissions. Where there is no essential conflict in the evidence and the case is virtually one of admitted facts, tantamount to a special verdict, the proper judgment to be rendered is a mere legal conclusion from the facts, and if the decision of the court is wrong, it is error of law, which may be reviewed on appeal. [State ex rel. Wenneker v. Cummings, 151 Mo. 49, 57, 52 S. W. 29; Cox v. Sloan, 158 Mo. 411, 429, 57 S. W. 1052; Stanton v. Leonard, 344 Mo. 998, 130 S. W. (2d) 487.] In this case the ultimate fact, however, as to whether or not Dee. A. Rice controlled the respondent is not a conceded or admitted fact.

Appellants contend that respondent ''is controlled by Dee A. Rice and that therefore the defendant (respondent) and Dee A. Rice

are employers within the meaning of this provision (subdivision 4, paragraph (h) of Sec. 3) because together they have more than eight employees." Respondent denies that it is such an "employer" and insists that the evidence shows that the businesses are separately managed and controlled.

We think the applicable rule, for a consideration of this record, is stated in Kingman v. Waugh, 139 Mo. 360, 365, 40 S. W. 884, as follows: "If parties agree upon the ultimate facts and submit to the court the questions of law arising thereon, a review of the rulings on those questions may be had on appeal, assuming that they are duly presented for review. But a mere statement of certain admitted facts in lieu of testimony does not always raise a question of law. When a statement of that sort raises merely an issue of fact, the conclusiveness of the circuit (court's) ruling thereon (necessarily) is no less than if the same facts had been put before the court in a different form." In the case at bar the correctness of certain evidence is admitted, but the ultimate question of whether Dee A. Rice controlled respondent was not admitted.

In view of the general finding against appellants, and in favor of respondent, we must sustain the judgment of the trial court if it can be done upon any reasonable theory of the law and facts. [Railsback v. Bowers, supra; Stoepler v. Silberberg, supra.] The same is true where there is an agreed statement of certain facts. [Kingman v. Waugh, supra; Rubin v. Bassakin (Mo. App.), 130 S. W. (2d) 224, 229.] The conceded facts in this case must be viewed in a light most favorable to respondent and inferences favorable to appellants must be rejected in determining whether or not the decision of the trial court should be sustained.

Do the conceded facts in this case compel the conclusion of fact that respondent corporation was "controlled" by Dee A. Rice? Appellants rely on the words of the statute: "Controlled by legally enforceable means or otherwise, directly or indirectly by the same interests." Although the evidence may have been such that an inference of fact could have been drawn to the effect that respondent corporation was controlled by Dee A. Rice the inference was not drawn from the evidence by the trial court, and the evidence, as conceded evidentiary facts, was not such as to compel the conclusion of fact that respondent was so controlled. There was no evidence that Dee A. Rice voted his 449 shares of stock in respondent corporation or that he controlled the corporation's board of directors. The mere fact that he was employed as manager of the corporation, and was its president and was one of its three directors, does not compel the conclusion that he controlled by legally enforceable means or otherwise, directly or indirectly, or that he exercised the power to control that was his by reason of his ownership of a majority of respondent's stock, and such fact was not conceded by the respondent. Proof that

the *control* of the two "employing units" was ultimately vested in the "same interests," and that both could be controlled, did not compel the conclusion that both employing units were *controlled* by the "same interests."

The holders of a majority of the stock of a corporation are, of course, entitled to dictate its policy and conduct its business in their own way so long as they act in good faith and their acts are *intra vires* but a mere admission that the ownership of a majority of respondent's stock was in Dee A. Rice was not an admission that such individual "controlled" the corporation. Although a corporation may conduct business through its president and other officers, the ultimate source of all authority lies in the Board of Directors who stand in the place of the individual stockholders in the sense of control they exercise over corporate affairs. An admission that Dee A. Rice was president and manager of the corporation was not an admission that he controlled the corporation.

In the case of Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 331, 235 S. W. 435, 441, this court said: "The corporation is an instrument created by the State for the aggregation of capital in enterprises to be organized and conducted for the benefit of whoever may happen at the time to be stockholders, under rules of safety established by law. Its existence requires and implies a control which stands in place of and for the individual investors in the possession and management of the fund. This control lies in the directors or trustees. They are the corporation. The president and other officers whom they appoint are agents of the corporation. While its business may be conducted through them, corporate acts, like the conveyance of its lands, are required to originate in the will of the directors." [See: Sec. 4558, R. S. 1929, 3 Mo. Stat. Ann., p. 2004.] Dee A. Rice was only one of three directors. In view, of the trial court's finding, we may not say that Dee A. Rice controlled the respondent corporation.

In addition it might be said that the evidence does not expressly show that Dee A. Rice owned a majority of respondent's stock and was respondent's president, a director and manager at all of the times mentioned in the petition. The witness testified as to these facts as of the date of the trial, and there was evidence from which it might have been inferred that the same conditions existed previous to the date of the trial. The conceded evidentiary facts, however, did not compel that conclusion. In view of the record in this case the finding of the trial court is not open for review.

In the case of Gibson Products Co. v. Murphy (Okla. Sup.), 100 Pac. (2d) 453, the facts were not indispute. It was admitted that the two separate corporations therein involved were controlled by the same officers and directors, to-wit, three officers who owned all of the stock of both corporations. The sole controversy was as to the constitutionality of the act. The court held a provision of the Okla-

homa act, similar to subdivision 4, paragraph (h) of Section 3 of our act, valid as against an attack upon the grounds that it violated the contract clause of the State Constitution.

In the case of Unemployment Compensation Commission v. City Ice & Coal Company, 216 N. C. 6, 3 S. E. (2d) 290, the "controversy" was submitted upon an agreed statement of facts. Therein two of the corporations were engaged in the coal and ice business and another in dairy pursuits. It was admitted that all corporations were directed from a central office, and were operated and controlled under a single central management, with the same individuals as the officers and directors of each corporate defendant. The court held that since the stock of the three corporations was closely held in one family and the corporations were operated from a central office, under a single central management, with the same officers and directors, the corporations were liable for contributions under the State's Unemployment Compensation Act as a single employing unit, since they were owned or controlled directly or indirectly by the same interest within the meaning of the act.

In the case of Maine Unemployment Compensation Commission v. Androscoggin, Jr. (Maine Sup. Judicial Court), 16 Atl. (2d) 252, one Healy had for many years owned and operated a boys' camp. Later he and two of his camp counsellors organized a corporation to create and operate a separate junior camp. Both camps were to continue, Healy with the senior camp and the corporation with the junior camp. The three incorporators became members of the board of directors of the new corporation with Mr. Healy as chief executive officer and head of the company. Mr. Healy owned a majority of the outstanding stock. It was contended that he controlled the corporation within the meaning of a provision of the Maine Unemployment Compensation Act, similar to subdivision 4, paragraph (h), Section 3 of our act, so that all employees of both camps could be considered together and so that Healy and the corporation would be "employers" under the act. The cause was submitted upon an agreed statement of facts and not on appeal, but on "report" (in effect certified for decision). The court said (16 Atl. (2d) 252, 256): "The control required is not necessarily that legally enforcible. It may be otherwise. It is a matter of actual control. Mr. Healy, who had run the senior camp for years and who in 1936 with the two counsellors caused to be created the new corporation to operate the junior camp, was elected president, a director, and was the owner of the majority of the corporate stock. As president he was 'the chief executive officer and head of the Company.' [By-laws, Article IX, Section 1.] Financially he had more in the corporation than either of the other stockholders. Owning the majority of the stock, he could control the election of the company's officers and determine its policies through the agencies of those so elected. Taking all the

facts into consideration, particularly Mr. Healy's relations with the two counsellors before the organization of the company and the fact that they had received their training under him who had carried on a boys' camp business for more than twenty years, it is but natural to conclude that they regarded him as the one whose voice in the conduct of the company's affairs should govern. We find that he controlled this corporation within the meaning of the statute.'' In the case before us the trial court reached a contrary conclusion of fact which is binding upon us.

In the case of Independent Gasoline Company v. Bureau of Unemployment Compensation (Ga. Sup.), 10 S. E. (2d) 58, the defendant tendered a demurrer to plaintiff's petition seeking to recover amounts claimed to be due under the Unemployment Compensation Act of the State of Georgia. The trial court overruled the demurrer and defendant saved exceptions and sued out a writ of error. Plaintiff's petition alleged that one Hardin was the president and active manager of each of two corporations there involved; that the books and records were kept in Hardin's office and Hardin owned a majority of the stock of each corporation and that together the corporations employed more than eight workers and were under the act by reason of a provision of the Georgia act similar to subdivision 4, paragraphs (h), Section 3 of our act. The facts were taken from the allegations of the petition. It was contended that the provision was void as contravening a provision of the State Constitution guaranteeing impartial and complete protection of property and the equal protection clause of the United States Constitution. The court held the provision void as contravening the constitutional provisions invoked and that the demurrer to the petition should have been sustained. Certiorari was denied by the United States Supreme Court, November 25, 1940, Bureau of Unemployment Compensation v. Independent Gasoline Co., 61 Sup. Ct. 175. In the case before us the constitutionality of the particular provision of the act is not questioned. In view of the conclusions we have reached it is unnecessary to review other authorities.

The judgment is affirmed. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.