**SEMO MOTOR COMPANY, a corporation, Plaintiff-Respondent,**

v.

**NATIONAL MUTUAL INSURANCE COMPANY, formerly known as Colonial Mutual Insurance Company, a corporation, Defendant-Appellant.**

No. 8295.

Springfield Court of Appeals.

Missouri.

Oct. 15, 1964.

Dwight Crader, Sikeston, for defendant-appellant.

Harry A. Blanton, Blanton, Blanton & Rice, Sikeston, for plaintiff-respondent.

HOGAN, Judge.

This action was brought on an automobile insurance policy issued by the appellant insurer. The automobile involved was de-

stroyed in a collision, and the owner thereafter discharged the responsible tort-feasors by accord and satisfaction, but failed to discharge the mortgage debt against the automobile. The plaintiff, who was the original vendor, brought this action as assignee of the mortgage and had judgment against the defendant insurer for the amount of the unpaid debt, plus interest. The defendant has appealed, and the general question before us is whether, in the circumstances, the insured's release of the tort-feasors has released the insurer from liability to the mortgagee.

The case was tried to the court upon stipulated facts, and the substance of the stipulation is that on October 27, 1959, the plaintiff sold the automobile involved to one Ray Smith. At the same time, Smith gave the plaintiff his promissory note, secured by a mortgage on the automobile, and the note and mortgage were at once endorsed and sold to General Motors Acceptance Corporation at Blytheville, Arkansas. On March 14, 1960, the defendant (actually its predecessor in interest) issued an automobile insurance policy covering the automobile in question to Smith and his wife, Naomi. The policy provided coverage against loss by collision or upset, and in material part provided by Item 3 that, in consideration of the premium and "subject to the limits of liability, exclusions, conditions and other terms of this policy," the carrier agreed to pay direct and accidental loss of or damage to the insured automobile under the coverages specified, and this item concluded:

"LOSS PAYEE: Any loss under Coverage A, B, C, D, E and F is payable as interest may appear to the named insured and G.M.A.C., Blythesville, Arkansas."

Coverage B is the collision or upset coverage.

On May 6, 1960, while the policy was in effect, the automobile was destroyed in a collision. It is stipulated that the loss was covered by the policy and that at the time of loss the defendant became obligated to

pay the mortgagee the sum due it under its chattel mortgage.

On July 26, 1960, Mr. Smith (the insured mortgagor) brought an action against the insurer to recover the amount due because of the collision loss; recovery was also sought for vexatious delay and attorneys' fees.

At about the same time, Mr. Smith commenced an action against the responsible tort-feasors in another court. We do not know when this second action was initiated, but from the stipulation of facts we know that on August 9, 1960, Mr. Smith filed an amended petition against these tort-feasors seeking to recover only for personal injuries, without making claim for any property damage. Though it is not shown precisely how much knowledge the insurer had concerning this second suit, it is apparent from the record that it made some claim of lien upon the proceeds of this second action under the subrogation provision of its policy.

On March 8, 1961, Mr. Smith executed a full release to the responsible tort-feasors. The release appears in the record, but we do not know when Mr. Smith received payment nor when the release was delivered. On April 26, 1961, the insurer's attorney addressed a letter to the insured's attorney advising him that, although the carrier had in the past asserted a lien, it would not further assert its lien if the action upon the policy was dismissed. Upon receipt of this letter, both the action against the insurer and the action against the responsible tort-feasors were dismissed with prejudice.

In the meantime, default had been made in payment of the mortgage debt, and consequently G.M.A.C. reassigned the note and mortgage to the plaintiff. The validity of this assignment is not questioned on this appeal. Plaintiff made demand for the balance due on the mortgage debt, and the insurer refused the demand. This action followed.

The appellant argues that by fully releasing the responsible wrongdoers, depriving the insurer of its right to subrogation, the policy has been forfeited by breach of condition subsequent and it argues that since in this instance the mortgagee's rights were wholly derivative, and the insured has no right of recovery, the mortgagee's right of recovery is also barred. The respondent maintains that the course of dealing between the insured and insurer amounted to a settlement of the loss without the mortgagee's participation or consent, and is therefore not binding on the mortgagee.

The parties' arguments, in large measure, center around two well-established and somewhat conflicting principles. The appellant insurer bases its argument on the policy provisions, pointing out that there are in general two types of loss payable provisions in property insurance policies. The "open" loss payable clause usually provides that, subject to the terms and conditions of the policy, the insured's loss, if any, shall be payable to the insured and the mortgagee as their interests may appear. The "standard" or "uniform" mortgage provision ordinarily contains a somewhat similar expression, but also provides that no act or omission of the insured shall invalidate the policy as to the mortgagee. Not all such wordings are identical, of course, and we do not undertake to deal generally with the nature and effect of loss payable provisions; however, the distinction generally drawn, as the appellant says, is that under the open loss payable clause the mortgagee stands in the mortgagor's shoes, and is usually considered subject to the same defenses, while under the standard clause a breach of the policy terms is no defense to an action by the mortgagee.[1] The appel-

1. Ford v. Iowa State Ins. Co., 317 Mo. 1144, 1149, 1154, 298 S.W. 741, 743, 745, 56 A.L.R. 842, 845, 849; Brown v. State Auto. Ins. Ass'n, Auto. Underwriters Corp., Des Moines, Iowa, Mo.App., 265 S.W.2d 741, 743 [1]; Prudential Ins. Co. of America v. German Mut. Fire Ins. Ass'n of Lohman, 231 Mo.App. 699, 705, 105 S.W.2d 1001, 1005 [5]; Gordon v. Northwestern Nat. Ins. Co., 228

lant's position is that since the insured has barred his own action, he has also barred any action by the mortgagee.

The respondent, on the other hand, minimizes the difference between the open and standard loss payable provisions, and argues that any adjustment, settlement or other disposition of the insured's claim made without the mortgagee's participation or consent is not binding on the mortgagee, whose rights became vested at the moment of loss. The respondent bases this argument on the well-established principle that even when the loss payable clause is of the open type a mortgagee entitled to the proceeds of an insurance policy is not bound by a settlement of the loss made by the carrier and its insured, where the settlement or adjustment is made without the mortgagee's knowledge or consent.[2]

A word here concerning the posture of this case on appeal, or at least our view of it, is appropriate. The case is before us on stipulated facts, and ordinarily when an action is tried upon an agreed statement of fact, the sole question presented on appeal is whether the judgment is represented by the proper legal conclusion upon the facts stipulated, Jewel Tea Co. v. City of Carthage, 257 Mo. 383, 388, 165 S.W. 743, 744, but such is not invariably the case. The stipulation here does not, for example, show whether the insurer had knowledge of the release executed by the insured when it waived its claim to subrogation if the action against it were dismissed, nor does it show that the settlement with the responsible wrongdoers had been fully effectuated by March 8, 1961, when the release was signed. We do not know precisely the nature and extent of the in-formation which the insurer had concerning the assured's negotiations with the responsible tort-feasors, but we consider it a reasonable inference that it knew of the action pending against the responsible tort-feasors and that it made its claim of lien against the proceeds of that suit. Therefore, since these ultimate facts or factual inferences are not stipulated, we must view the conceded facts in a light most favorable to the respondent and reject inferences favorable to the appellant, and affirm the judgment if that can be done upon any reasonable theory of the law and facts. Murphy v. Doniphan Telephone Co., 347 Mo. 372, 379, 147 S.W.2d 616, 619–620 [6] [7, 8].

Even so, the case is not without its difficulties. In point of fact, none of the authorities cited from our own jurisdiction actually rules the precise point in question, so far as we can determine. There are several fairly recent cases which indeed hold, as we read them, that settlement with, or release of, a tort-feasor for the full amount of the loss defeats the insurer's right of subrogation, and no recovery can thereafter be had against the insurer on the policy, e. g., Richardson v. Employers Mut. Liability Ins. Co. of Wis., Mo.App., 269 S.W.2d 132, 135–136 [2]; Knight v. Calvert Fire Ins. Co., Mo.App., 268 S.W.2d 53, 55 [2], and this appears to be the law generally, Anno., 38 A.L.R.2d 1095, 1096–1098, Section 2 (1954), but these authorities do not deal specifically with a mortgagee's rights after loss, but only with the insured's right of action on the policy. Ford v. Iowa State Ins. Co., supra, n. 1, 317 Mo. 1144, 298 S.W. 741, 56 A.L.R. 842, does discuss the rights of a mortgagee under an open loss payable clause upon forfeiture by the

Mo.App. 1008, 1021, 77 S.W.2d 512, 519–520 [1]; Anno., 38 A.L.R. 367, 368 I, II (1925); 5 Appleman, Insurance Law and Practice, § 3401, pp. 554–562 (1941).

2. Brown v. State Auto. Ins. Ass'n, Auto. Underwriters Corp., Des Moines, Iowa, supra, n. 1, 265 S.W.2d at 743 [1]; Hahn v. National American Fire Ins. Co., 233 Mo.App. 756, 761–762, 127 S.W.2d 94,

96–97; Clarkson v. Importers' & Exporters' Ins. Co., Mo.App., 15 S.W.2d 939, 940–941 [3]; see Lumbermen's Mutual Ins. Co. of Mansfield v. Wheeler, 225 Ark. 657, 284 S.W.2d 620, 622 [1]; Annos., 38 A.L.R. 383 (1925); 111 A.L.R. 697 (1937); 7 Am.Jur.2d, Automobile Insurance, § 199, p. 541; 5 Appleman, op. cit., § 3406, pp. 578–581.

assured, but does not take into account the effect of the carrier's knowledge of a policy violation which occurs after loss, nor deal with settlement of an admittedly covered loss without the mortgagee's consent. Ramsey v. Farmers' Mut. Ins. Co. of Macon, Mo., 234 Mo.App. 1102, 139 S.W.2d 1027, deals with the mortgagee's rights under an open loss payable clause in a case where the policy had been forfeited by reason of foreclosure before loss, but that case recognizes the principle that an insurer may waive or be estopped to assert policy defenses if it has knowledge of them or acquiesces in the policy breach. Brown v. State Auto. Ins. Ass'n, Auto. Underwriters Corp., supra, n. 1, 265 S.W.2d 741, does recognize the difference between the open and standard, or union, loss payable clauses, but specifically holds, 265 S.W.2d at 743, that the insurer may not effect a settlement of its liability with the assured which will bind the mortgagee unless the mortgagee consents, and in the Brown case there had been no violation of the policy provisions. The fact is that while courts generally hold that an insured who fully releases the responsible tort-feasor and destroys the carrier's right of subrogation thereby loses his right of action on the policy, this rule has not been universally extended, as the appellant seeks to maintain, to bar the mortgagee's right of indemnity. Anno., supra, 38 A.L.R.2d at 1098–1099, Section 3 (1954); 7 Am.Jur.2d, Automobile Insurance, Section 206, pp. 548–549.

On the other hand, we set to one side, though we do not ignore, the respondent's broader contentions that in net effect there is no difference between the open and standard, or union, loss payable provisions, and that there has, as a matter of fact, been no breach of the policy terms. In construing the loss payable clause here, we believe we are governed by the decision in the Ford case, supra, which holds, as we read it, that if the loss payable clause is made subject to the conditions of the policy, then the loss payable clause is to be construed as the open type. Ford v. Iowa State Ins. Co.,

supra, n. 1, 317. Mo. at 1156, 298 S.W. at 746, 56 A.L.R. at 850; Anno., 56 A.L.R. 850, 851 (1928). Nor do we find it necessary to resolve whether it could reasonably be said that the insurer here waived its right of subrogation or is estopped to assert such a defense, as far as the insured is concerned, because of its acquiescence in the insured's settlement. While there seems to be little doubt that an insurer may impliedly waive or be estopped to assert the destruction of its right of subrogation if it deliberately or negligently induces the insured to make a settlement with the tort-feasor, Anno., 16 A.L.R.2d 1269, 1271–1272, Section 2 (1951); Anno., supra, 38 A.L.R. 2d at 1099–1100, Section 4 (1954); 7 Am. Jur.2d, Automobile Insurance, Section 206, p. 548, we find it unnecessary to decide or attempt to state what the insured's rights against the insurer were after his release of the responsible wrongdoers.

There appears to be a conflict in the authorities whether, under the simple or open loss payable provisions in an automobile collision policy, the act of the insured in releasing the tort-feasor discharges the insurer's obligation to the mortgagee as well as to the insured. Our admittedly incomplete research shows only a few cases in which this precise question has been decided. In Elmore v. Royal Ins. Co., 154 Kan. 93, 114 P.2d 786, the insured mortgagor fully released the responsible wrongdoer within four days of the loss, without the knowledge of the insurer or mortgagee. The policy contained a loss payable clause made "[s]ubject to all the provisions, exclusions, conditions and warranties contained in this policy * * *." The mortgagee later sued the mortgagor's carrier, and recovery was denied. The Supreme Court of Kansas pointed out, among other things, that in Kansas the mortgagee had no rights independent of the mortgagor under the simple loss payable or open clauses, and concluded, 114 P.2d at 790, that "[the mortgagee's rights] were not independent rights but rights collateral to those of the mortgagor which the mortgagor, under the plain terms

of the contract, could forfeit. * * * The mortgagor did forfeit them. * * *" The court noted, however, 114 P.2d at 790, that "* * * [w]here the *insurer* and insured together, without the mortgagee's knowledge or consent, settle a loss and thereby deprive the mortgagee of his right to collect, as his interest may appear, an entirely different situation is presented. * * * In such a case the *insurer* has no basis for complaint. Simple and ordinary fairness precludes an insurer from arbitrarily disposing of a mortgagee's interest in that fashion. * * *" This court thus intimated that there are situations in which the carrier would be estopped to assert its right of subrogation as a defense to recovery by the mortgagee, if it settled its loss with the insured without the mortgagee's consent.

The insured executed a general release to the tort-feasor before settlement with his collision carrier, without the knowledge or consent of the mortgagee, in Sargent v. Firemen's Ins. Co. of Newark, 89 N.H. 171, 195 A. 346. The policy contained a loss payable clause making loss-payable to the insured and the mortgagee "as interest may appear." On appeal, the New Hampshire court held, 195 A. at 347–348, that "* * * the rule here is that, 'at the moment of loss, the rights of the parties were fixed. * * * Hall [the mortgagor] could not release the defendants from their obligation, nor defeat [the mortgagee's] right. * * * If a mortgagor's settlement with and release to an insurer does not discharge the latter's obligation to a mortgagee to whom the loss is made payable, we see no possible way in which a mortgagor's similar transaction with a third party can be held to produce the opposite result. * * *"

Superior Lloyds of America v. Boesch Loan Co., Tex.Civ.App., 153 S.W.2d 973, involved an action in which the plaintiff was the mortgagee suing the defendant insurer upon an insurance policy covering an automobile destroyed by collision. So far as the report shows, the mortgagor and his wife were injured in a collision between

their automobile and a train. They were injured in October of 1937, and made a settlement with the railway company on February 23, 1938. Upon the suit by the mortgagee, the defendant insurance company maintained that it was not further liable on the policy because the insured had accepted payment from the railway company and had executed a release covering all damages sustained in the collision, thereby forfeiting the insurer's right of subrogation. The loss payable clause there was made "* * * subject however to all of the terms and conditions of this policy, which are made a part hereof * * *." The mortgagee had judgment, and the insurer appealed. Upon appeal, the Texas court held, 153 S.W.2d at 975–976, that "* * * if Miller [the mortgagor] had forfeited his rights under the policy prior to the date of the loss, then Boesch [the mortgagee] would likewise be precluded from claiming rights under the forfeited contract. But in a case like this, where the policy was in full force and effect at the time the loss occurred, the rights of both the insured and * * * the mortgagee, were fixed, and Boesch's rights thereunder could not be taken away by the acts of Miller alone, after the loss occurred. * * * These acts [destroying subrogation] by Miller, not ratified or participated in by Boesch, would not destroy the fixed interest Boesch had in the policy after loss, by virtue of his loss payable clause. * * *"

In Remedial System of Loaning v. New Hampshire Fire Ins. Co., 227 Ky. 652, 13 S.W.2d 1005, the defendant carrier insured a truck with collision coverage and a loss payable clause, apparently simply making loss payable to the mortgagor and mortgagee. While the policy was in effect, the truck was destroyed by collision with a train, and at the same time the insured mortgagor suffered severe personal injuries. The carrier denied liability and advised the insured to seek a settlement from the railroad company. The insured obtained such a settlement and fully released the tort-feasor. In declaring the applicable

law, the Kentucky court held, 13 S.W.2d at 1006 [4, 5]: "* * * here the appellant [mortgagor] had a right to receive from the insurance company the amount due on its mortgage debt, and that right became a vested one when the truck was destroyed in the collision. Such right was not subject to be defeated without the consent of appellant by an act of the assured alone. * * * If Ray [the mortgagor] could not directly release appellant's right to the money due it on the contract, he could not defeat that same right indirectly by a collateral contract with the alleged wrongdoer. * * * [The insurer] could not deny liability, direct or permit Ray to make a settlement with the alleged wrongdoer, which inured to its benefit, and then defeat the contractual rights of the mortgagee by invoking the settlement it had suggested and countenanced. * * *"

◼ Thus, while there is authority to the contrary,[3] these authorities suggest two principles applicable to the kind of situation presented here: a) that even under an open loss payable clause the right of the mortgagee to receive its proportionate share of the proceeds of a collision policy becomes fixed at the moment of loss and cannot be thereafter defeated by any act of the insured alone; or b) that if the insurer countenances or suggests the insured mortgagor's settlement with the responsible tort-feasor without participation or consent of the mortgagee, and such settlement inures to the insurer's benefit, then the insurer may not be heard to assert its loss of right to subrogation as a defense to an action by the mortgagee. We would accept the first of these two propositions with some reserve; we are unwilling to say that there is no violation of the policy provisions occurring after loss which would not defeat the mortgagee's rights under an open loss payable clause, but we consider the second principle to be sound and to be applicable here.

◼ As we view the matter, there is no difference in principle between the case at hand and those situations in which the insurer and insured have negotiated a settlement between themselves without consideration of the mortgagee's interest. It is stipulated that the loss was within the policy provisions and that the carrier became obligated to pay the mortgagee to the extent of its mortgage debt when the loss occurred. Some liability therefore accrued to the insurer under its policy when the loss occurred, and this liability ran both to the insured and the mortgagee, though to be sure the precise amount was indeterminate. See 7 Am.Jur.2d, Automobile Insurance, Section 189, pp. 528–529. There is no claim that the carrier was unaware of the mortgagee's interest, nor that the insured violated any of the policy provisions after loss, except that the release defeated the carrier's right of subrogation. The insurer then made a claim of lien against the proceeds of an action begun against the responsible tort-feasors. Aware of its liability and of the insured's action against the tort-feasors, and having laid claim to a lien, the carrier, through its attorney, then advised the insured that it would make no claim for its subrogation if it were in effect relieved of liability on the policy. The mortgagee did not consent to nor participate in these negotiations. We do not say that the insured was not barred, but since the insurer was in effect relieved of a fixed liability in consideration of its foregoing a claim to subrogation, it can be said that there was a settlement of the insurer's liability between the carrier and the insured without the consent of the mortgagee, and we think the mortgagee is not bound by that settlement. The judgment is therefore affirmed.

RUARK, P. J., concurs.

STONE, J., dissents.

---

3. E. g., see Conard v. Moreland, 230 Iowa 520, 298 N.W. 628; Universal Credit Co. v. Service Fire Ins. Co. of New York, 69 Ga.App. 357, 25 S.E.2d 526.