**Doug GRAUE, Plaintiff–Respondent,**

v.

**MISSOURI PROPERTY INSURANCE PLACEMENT FACILITY,
Defendant–Appellant.**

**No. 74899.**

Supreme Court of Missouri,
En Banc.

Feb. 23, 1993.

Rehearing Denied March 23, 1993.

Wendell W. Crow, Kennett, for defendant-appellant.

Dennis P. Wilson, Dexter, for plaintiff-respondent.

HOLSTEIN, Judge.

Plaintiff Doug Graue brought this action following the total destruction of a dwelling house by fire in Hayti, Missouri. He alleged he had insured the house for $5,000 under a policy issued by defendant Missouri Property Insurance Placement Facility (hereinafter "Facility"). Following a trial to the court on a stipulated record that included exhibits, deposition testimony and a "chronology of events," judgment was entered for Graue.

After opinion, this case was transferred to this Court by the Missouri Court of Appeals, Southern District. The basis for transfer was an asserted conflict in case-law construing the statutory requirement of a "notice of cancellation or notice of nonrenewal" found in § 379.845.2.[1] That issue need not be addressed because the

---

1. All references to statutes will be to RSMo 1986, unless otherwise noted.

facts in this case support the trial court's conclusion that the policy was in force on the date of the loss regardless of any conflict in the construction of the statute.

■■■ The standard of review is that stated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). When the record is stipulated but not all ultimate facts or factual inferences have been conceded, this Court reviews the stipulated facts in the light most favorable to the respondent and disregards inferences favorable to the appellant. *Murphy v. Doniphan Telephone Co.*, 347 Mo. 372, 147 S.W.2d 616, 620 (1941); *McHenry v. Claspill*, 545 S.W.2d 690, 693 (Mo.App.1976); and *Adams v. White*, 488 S.W.2d 289, 293 (Mo.App.1972). A bench tried judgment which reaches the correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment. *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318 (Mo.banc 1964); *Clark v. Brown*, 814 S.W.2d 634, 643 (Mo.App.1991); *Orrock v. Crouse Realtors, Inc.*, 813 S.W.2d 929, 932 (Mo.App. 1991); *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 915 (Mo.App.1991). The facts are reviewed with these principles in mind.

■■■ Facility is a statutory entity made up of all property insurers authorized to do business in Missouri. Its purpose is to provide property insurance to persons who are entitled to insurance but are unable to obtain coverage through ordinary methods. §§ *379.810* to *379.880*. Facility refers to these policies as "the Missouri Fair Plan." Graue first submitted his application for insurance to Facility through Bond & Associates, an insurance agency in Caruthersville, Missouri, on December 9, 1983. Thereafter the application was accepted for a period of one year. In every year from 1984 through 1988, applications for renewals were made to Facility through Bond & Associates. Facility issued a notice of renewal and quoted an annual premium in December of each year. The notices of renewal were mailed to Bond & Associates, not to Graue. Bond & Associates would then notify Graue, who would pay the premium to Bond & Associates. Apparently,

Bond & Associates would then transmit the payments to Facility.

The same application process and the same notice of renewal and quotation of premium were issued by Facility on December 12, 1989, and mailed to Bond & Associates. The notice indicated that the current policy was to expire on January 9, 1990, and quoted a premium of $102 for the following year. The notice, again as usual, included the following statements:

**RENEWAL** In order to renew your policy with no lapse in coverage, payment must be received before the expiration date indicated above. If payment is received on or after the expiration date shown above, coverage will be effective 12:01 A.M. standard time the day following receipt of payment *provided* payment is received *within forty-five days from expiration date.*

The notice also included the following: *IMPORTANT* Payment must be in the form of a certified check, bank draft or money order payable to: Missouri Fair Plan for the amount due as shown and mailed to: Missouri Fair Plan, 906 Olive, Suite 1000, St. Louis, MO. 63101. Please return indicated copy of this notice with your payment. This is the only premium notice you will receive.

Below this was the following: "If you have any questions, please contact your agent."

Several days before the insurance was to expire in 1990, Graue received a letter from Bond & Associates saying, "Bring your money to my office before [January 9, 1990] in order to keep the insurance in force on this property." A copy of the notice from Facility was enclosed. While Facility's notice conditioned the insurance coverage on receipt of payment, nothing in the notice says that the insurance agent could not accept payment on behalf of Facility.

In conformity with the letter, Graue appeared at Bond & Associates' office on January 8, 1990. Deanna Maclin, the insurance agent who took the money, indicated that the premium may not get to St. Louis in time. Graue responded, "Well, just go ahead and get it on up there." When the

agent was asked if she explained to Graue that if the money did not get to St. Louis before the policy expired, he would not have coverage, she replied, "No, I'm sure I didn't." Instead, she took the payment and issued Bond & Associates' check payable to Facility in the amount of $102, mailing it late on January 8, 1990, although the envelope is postmarked January 9, 1990.

The insured dwelling burned on January 11, 1990. On January 12, Graue advised Bond & Associates of the loss, and Bond & Associates called Facility. The check for the premium was received in St. Louis on January 12. On that day, Facility returned the check to Bond & Associates along with a letter explaining there was no coverage in force. This litigation ensued.

█ The dispositive issue in this case is whether Bond & Associates had apparent authority to accept payment of premiums as an agent of Facility. The ultimate issue of apparent authority was not directly conceded or refuted by the stipulation. Determining whether Bond & Associates had apparent authority to accept the premium on behalf of Facility necessitates some discussion not only of the law of agency but the law of insurance, the rules of contractual construction, and also the application of those principles to the facts of this particular case.

█ Missouri follows the Restatement of Agency rule that apparent authority exists only to the extent that it is reasonable for a third person dealing with the agent to believe that the agent is authorized. *Restatement (Second) of Agency* § 8 (1958); *Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 13 (Mo.1970). When a person's conduct is such that it is reasonable to believe the person has authority to act for another, and the other has reason to know of such conduct and allows it, a third person may reasonably conclude that the conduct is authorized. Apparent authority may be created by virtue of "position if a principal puts an agent into, or knowingly permits the agent to occupy a position in which according to ordinary habits of persons in the locality, trade or profession, it is usual for that agent to have a particular

kind of authority." *Utley Lumber Co. v. Bank of the Bootheel*, 810 S.W.2d 610, 612 (Mo.App.1991); *see also Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841, 847 (Mo.App.1986). Clearly, a usual course of dealing had developed in prior years in which Facility had not only acquiesced but had cooperated by dealing with Graue only through Bond & Associates. The insurance agency was provided with the notices, coordinated inspections, processed the applications, and collected premiums.

█ The statutes relating to insurance reinforce the conclusion that Bond & Associates had apparent authority to receive the premium on behalf of Facility. The statute creating Facility presupposes that policies issued by Facility have been solicited by a "licensed producer." § *379.830*. Chapter 379 does not define the term "licensed producer." The only way to breathe meaning into the word "licensed" is to refer to the general insurance law, which has provisions relating to the licensing of agents, § 375.014, and the licensing of brokers, § 375.071. These statutes are *in pari materia* with the provisions of chapter 379 and cannot be ignored as having no bearing on whom "licensed" insurance producers represent in the insurance transactions.

█ A broker may be an agent of the insurer or of the insured, depending on the facts of a particular case. *Schimmel Fur Co. v. American Indemnity Co.*, 440 S.W.2d 932, 938 (Mo.1969). However, an insurance agent is by definition more restricted. By definition an insurance agent is ordinarily "an agent of the insurer" and not an agent of the insured. § *375.012(4)*. The term "licensed producer" is broad enough to include both insurance agents and brokers. Because insurance agents fall within the meaning of "licensed producers," it follows that such agency is usually an agency for the insurer, and a broker while engaging in identical activity is acting as an insurance agent.

█ Ms. Maclin, one of the co-owners of what was formerly Bond & Associates, stated that she had an insurance agent's license. She repeatedly referred to Bond &

Associates as an insurance agent or agency and noted at one point that the bulk of their business was as an agent for one company. No direct evidence establishes that Ms. Maclin or Bond & Associates had an insurance brokers license. The only method by which one could conclude that Bond & Associates was an insurance broker is by inference. However, inferences in this record must be construed favorably to Graue. Thus, Bond & Associates will be treated as having no authority other than that of an insurance agent.

■ An insurance agent may be one of two types. An insurance agent may be a "general agent" who has authority to enter contracts binding on the insurer. *Corder v. Morgan Roofing Co.*, 355 Mo. 127, 195 S.W.2d 441, 445 (1946). By contrast, an insurance agent may be merely a "soliciting agent" whose authority is limited to soliciting policies, collecting premiums and the like. *American Family Mutual Ins. Co. v. Bach*, 471 S.W.2d 474, 478 (Mo.1971).

■ The insurance program created by § 379.810, *et seq.*, creates an amalgam insurer made up of all property insurance carriers. The amalgam insurer provides insurance coverage for certain property risks. As a matter of law and industry practice, all agents of the insurance companies involved, as well as brokers, are authorized to solicit insurance customers for the amalgam insurer. The effect is that all licensed insurance agents and licensed brokers, referred to collectively as "licensed producers," are soliciting agents for Facility.

■ As a general rule, a soliciting agent for an insurance company has the implied authority[2] under Missouri law to do everything necessary to discharge the business at hand, including soliciting insurance, delivering policies, collecting premiums, and waiving conditions precedent. *Burckhardt v. General American Life Ins. Co.*, 534 S.W.2d 57, 70 (Mo.App.1975). When premiums are collected, an insurance agent does not take the money as his or

her own, but receives the money as a fiduciary of the insurer. § *375.051*. The statutes relating to the relationship between insurers and soliciting insurance agents establish the standard for the industry. Facility cannot claim ignorance of these statutes and practices. A member of the general public has the right to rely on the general rules of law as well as industry practices when dealing with insurance agents. Secret limitations on the authority of a soliciting insurance agent may be valid between the insurer and the agent but do not negate a soliciting agent's apparent authority to third parties. *Dudley v. DuMont*, 526 S.W.2d 839, 846 (Mo.App.1975).

■ The insurance agent, Ms. Maclin, did not inform Mr. Graue that she could not accept the premium. Generally, insurance agents may collect premiums for the insurer. Facility had full knowledge of the course of dealing that had developed over the years between Graue and Bond & Associates. Facility was undoubtedly aware that Graue's premiums were collected by the insurance agency. The premium notice did not disclaim the agent's authority to receive the premium. Viewed favorably to respondent, the premium payment notice telling Mr. Graue to submit any questions to the agent, the letter from Bond & Associates instructing him to deliver the money to its office before January 9, and the fact that Ms. Maclin took the premium without explaining that she had no authority to collect it on behalf of Facility demonstrate that Mr. Graue's reliance was reasonable. Ms. Maclin gave no warning that she had no authority to collect the premium nor does the notice contain a warning that the agent has no authority to collect premiums on behalf of facility. Her receipt of the premium without disclaiming such authority is entirely consistent with apparent authority.

Also reinforcing the conclusion that Bond & Associates was acting as an insurance agent for Facility in receiving the

---

**2.** We recognize that implied authority is not the same as apparent authority. The former is a grant of specific authority implied from more general express authority given an agent. *Restatement (Second) of Agency* § 7 cmt. C (1958). Here there is no express authorization.

premium is the ambiguity of the premium notice. The premium notice was not merely a billing but was part of the contract setting forth terms of the policy and conditions precedent to the policy becoming effective. Either of two reasonable conclusions could be reached as to when payment was effective. The notice here may have meant that payment was effective when received in St. Louis or when received by one having authority to collect payment of premiums for Facility. Graue, in response to directions of the producing agent, brought his premium to the office before January 9, 1990. In doing so, he was following the directions of the agent, precisely as he was instructed to do in the form notice supplied by Facility.

Where a contract is fairly open to two or more interpretations, that construction will be adopted which is against the one who prepared the contract. *John Deere Co. v. Hensley*, 527 S.W.2d 363, 365 (Mo. banc 1975). Similarly, ambiguities in insurance contracts are resolved in favor of the insured. *Shelter Mutual Ins. Co. v. Brooks*, 693 S.W.2d 810, 812 (Mo. banc 1985). Construing the ambiguity against Facility and in favor of Graue, the payment of the premium to Bond & Associates as a soliciting agent was effectively a payment to Facility, which was accepted by Bond & Associates on behalf of Facility.

Viewed favorably to the trial judge's decision, an ordinarily prudent person would believe that Bond & Associates was the soliciting agent of Facility and, therefore, had authority to accept the premium payment for Facility. Facility, although fully aware of the circumstances, said nothing in its premium payment notice which would disabuse Graue of such belief. In fact, Facility left ambiguities in the notice and encouraged Graue to seek the advice of the agent should there be any question. When Graue waited until January 8, 1990, to deliver his premium, he was doing so in reasonable reliance on Bond & Associates' representation that payment should be made prior to January 9, 1990. The judgment is affirmed.

ROBERTSON, C.J., and PRICE and LIMBAUGH, JJ., concur.

BENTON, J., dissents in separate opinion filed.

THOMAS, J., dissents in separate opinion filed.

COVINGTON, J., concurs in opinions of BENTON and THOMAS, JJ.

BENTON, Judge, dissenting.

The principal opinion affirms the result of the trial court by invoking a special standard of review and by emphasizing selective facts.

Two important procedural facts dominate this case. First, the trial court heard *no* live testimony. Instead, the only evidence presented was a stipulation of facts and the deposition testimony of Doug Graue, the plaintiff-respondent, and Deanna Maclin, his insurance agent (including the deposition exhibits). Second, the trial court made findings of facts and conclusions of law on the only issue plead to it—that the Missouri Property Insurance Placement Facility (the "Facility") is required to give a notice of nonrenewal before a policy can expire. While some evidence implicates other points, the other two issues in this case— the apparent authority of Bond & Associates to accept premiums and bind the Facility, and the effect of mailing this premium to the Facility—were first clearly raised in Graue's brief to the Court of Appeals, Southern District.

Assuming that all three issues are properly before this Court, the law and the evidence support reversing the trial court, not affirming it.

*I. The Proper Standard of Review*

The key difference between this opinion and the principal opinion is the standard of review. Once the standard of review required by this Court's decisions and Rules is determined, the evidence clearly shows that the decision below must be reversed.

"[W]here the facts are derived from the pleadings, stipulations, exhibits, and depositions, ... no deference is due the trial court's judgment." *Southgate Bank &*

*Trust Co. v. May*, 696 S.W.2d 515, 519 (Mo.App.1985); *see also Sheldon v. Board of Trustees of the Police Retirement System*, 779 S.W.2d 553, 554 (Mo. banc 1989); *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988); *Bremen Bank & Trust Co. v. Muskopf*, 817 S.W.2d 602, 604 (Mo.App.1991); *Housing Authority of St. Louis County v. Boone*, 747 S.W.2d 311, 313 (Mo.App.1988). Deference is required only when the trial court has had a superior opportunity to determine the credibility of the witnesses—namely where there has been live testimony. *Rule 73.-01(c)(2)*. Otherwise, review is in the nature of a suit in equity. *Rule 73.01(c)(1); see also Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Where, as in this case, the trial court heard no live testimony and did not consider the now-determinative issue, there is no reason to view the evidence in accordance with the trial court's judgment. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979). Instead, this Court should draw the proper factual and legal conclusions from the evidence. *Id.*

The cases cited by the principal opinion are founded on the law of appellate review as it existed before any statute or rule on that subject (let alone *Murphy v. Carron*). *McHenry v. Claspill*, 545 S.W.2d 690, 693 (Mo.App.1976), relies solely on *Adams v. White*, 488 S.W.2d 289, 293 (Mo.App.1972) and *Semo Motor Co. v. National Mutual Insurance Co.*, 383 S.W.2d 158, 161 (Mo. App.1964). *Adams*, in turn, relies solely on *Semo Motor*, which relies solely on *Murphy v. Doniphan Telephone Co*, 147 S.W.2d 616, 619–20 (Mo.1941). *Doniphan Telephone* predates the 1945 Constitution,

which first authorized this Court to make rules of procedure. At the time of *Doniphan Telephone*, there was no statute or rule governing appellate review.

In this case, Rule 73.01(c) instructs this Court to review the evidence, not in accordance with the trial court decision, but rather to determine the proper factual and legal conclusion.

## II. Application of the Standard of Review

The principal opinion affirms the trial court on the theory that Bond & Associates had apparent authority to accept payment and bind the Facility. To recover on the basis of apparent authority, a plaintiff must show that: 1) he possessed a careful and prudent belief that an agent has authority to act on behalf of the principal; 2) the principal must have known or had reason to know of the agent's conduct, and allow such conduct; and 3) the plaintiff must have acted reasonably relying on the agent's conduct. *Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 12–13 (Mo.1970); *see also MAI 13.07(1) & 13.07(2)*.

Assuming (as the principal opinion does) that, as an insurance agent, Bond & Associates could possess apparent authority to act on behalf of the Facility,[1] Graue—the plaintiff with the burden of proof—failed to prove reasonable reliance. To prove reasonable reliance a party "must not have closed his eyes to warning or inconsistent circumstances." *Jeff-Cole Quarries*, 454 S.W.2d at 13. The major inconsistent circumstance is the premium notice received by Graue stating:

> A. No, none whatsoever.

Second, Maclin later testified that Bond & Associates had "brokerage business," presumably acting as agents of their clients rather than as agents of insurance companies. Finally, the premium quote was not sent to Bond & Associates by the Facility's choice. Rather, it was sent to Bond & Associates because the application for coverage filed on Graue's behalf requested that it be sent to Bond & Associates, instead of Graue. All of these facts taken together strongly suggest that Bond & Associates was the agent of Graue, not the Facility.

---

1. There are several pieces of evidence which undercut this assumption by the principal opinion. First, Maclin testified that she represented Graue, not the Facility:

Q. You're not an agent of Missouri Property Insurance Placement Facility, you are what they call a producer?
A. Yes.
Q. You're actually working for the customer that comes in?
A. Yes.
Q. You all have no authority whatever to bind any insurance coverage for Missouri Property Insurance Placement Facility?

RENEWAL IN ORDER TO RENEW YOUR POLICY WITH NO LAPSE IN COVERAGE, PAYMENT MUST BE RECEIVED BEFORE THE EXPIRATION DATE INDICATED ABOVE. IF PAYMENT IS RECEIVED ON OR AFTER THE EXPIRATION DATE SHOWN ABOVE, COVERAGE WILL BE EFFECTIVE 12:01 A.M. STANDARD TIME THE DAY FOLLOWING RECEIPT OF PAYMENT *PROVIDED* PAYMENT IS RECEIVED *WITHIN FORTY-FIVE DAYS FROM EXPIRATION DATE* SHOWN ABOVE. QUOTE IS NULL AND VOID THEREAFTER. (emphasis in original).

In another place, the notice stated (with capitalization and typeface as follows):

*IMPORTANT*

PAYMENT MUST BE in the form of a certified check, bank draft or money order PAYABLE TO:

MISSOURI FAIR PLAN

for the amount due as shown, and MAILED TO:

MISSOURI FAIR PLAN
906 OLIVE, SUITE 1000
ST. LOUIS, MO. 63101.

PLEASE RETURN INDICATED COPY OF THIS NOTICE WITH YOUR PAYMENT.

THIS IS THE ONLY PREMIUM NOTICE YOU WILL RECEIVE.

Immediately beneath these payment instructions, the notice stated: IF YOU HAVE ANY QUESTIONS PLEASE CONTACT YOUR AGENT. Lastly, the notice

characterized Bond & Associates as the representative of Graue, not the Facility.

The principal opinion construes the notice as ambiguous. Even if it is ambiguous, a reasonable person would try to resolve the apparent inconsistencies and ambiguities between this notice and the letter sent by Bond & Associates.

The record—especially Graue's own testimony—shows no attempt to resolve these inconsistencies. Instead, Graue repeatedly stated that he did not remember any of the details connected with his dealings with Bond & Associates during December 1989 and January 1990. Maclin's testimony indicates that, normally, it was Graue's mother—who died in late December 1989 or early January 1990—and not Graue who handled this insurance policy.

Finally, the majority tries to minimize Maclin's statement to Graue upon receipt of the premium that it might not reach St. Louis in time. While Maclin did not refuse to forward payment to the Facility, her words clearly indicate that payment to her did not take the place of payment to the Facility.[2]

Authority is not "apparent" simply because the party claiming has acted upon his conclusions * * * (nor) simply because it looked so to him.... It is only where a person of ordinary prudence, ... acting in good faith, and giving heed not only to opposing inferences but also to all restrictions * * * brought to his notice, would reasonably rely, that a case is presented within the operation of the rule. *Jeff-Cole Quarries*, 454 S.W.2d at 13, quoting 1 *Mechem on Agency*, § 726, at 513 (2d ed.).

In short, the evidence—taken as a whole—simply does not support the conclusion that Graue acted reasonably in relying

**2.** Maclin testified as follows:
Q. When he came in to pay that $102.00 on January 8th, was there any conversation about "this is the day before your policy expires"?
A. Yes, I told him, I told him, I said, "You are barely getting this in here before the expiration date, and *I don't believe it will make it up there before it expires.*" And he said, "Well, just get it up there."

Q. Did you tell him that if it did not make it up there prior to the expiration date time and hour that's shown on the policy that his insurance would be expired?
A. I probably didn't, because we think that everybody that has been doing business with Missouri Fair Plan *has already read this form numerous times and knows this.*
(emphasis added).

on the apparent authority of Bond & Associates to accept payment and bind coverage.

## III.

Resting solely on the finding of apparent authority, the principal opinion does not reach the other two issues. As the premium was mailed too late to reach the Facility before it was due, the mailbox rule does not apply in this case. *Hammond v. Missouri Property Insurance Placement Facility*, 731 S.W.2d 360, 366–68 (Mo.App. 1987). On the only issue actually raised by the petition, I believe that there is a substantial difference between a policy expiring because of the insured's inaction and the Facility choosing not to renew a policy. Because I would reverse the judgment, I therefore dissent.

THOMAS, Judge, dissenting.

I concur in the result reached in Judge Benton's Dissenting Opinion. As Judge Benton points out, the theory of apparent authority and the issues that constitute the elements of that theory, all of which are marshalled in an impressive array of advocacy in the majority opinion and in Judge Benton's opinion, were an afterthought in this case. Apparent authority was introduced by the plaintiff in the court of appeals as an alternative basis for finding the policy to be in effect at the time of the fire. We have no trial evidence on this issue; it was agreed to submit the case upon a stipulation of facts and the brief deposition testimony of Doug Graue, the plaintiff-respondent, and of Deanna Maclin, the part-owner of Bond & Associates.

After finding myself caught up in the escalating advocacy of the majority and dissenting opinions, I have now stepped back and asked, "What was Mr. Graue's belief as to the status of his insurance policy when he left the office of Bond & Associates on January 8, having paid the premium of $102 for the next year?"

Mr. Graue's deposition consists of 101 questions and answers, 25 of which answers are in substance, "I don't know," or "I don't remember." As might be expected with a discovery deposition, it consists only of direct examination by the attorney for his opponent, the insurance company. More important for this analysis, it does not even attempt to cover the occasion on January 8 when Mr. Graue went to the office of Bond & Associates and paid the premium. Despite the brevity and intermittent nature of this testimony, I can draw some firm conclusions about Mr. Graue's state of mind in this matter. I am abidingly convinced that the intriguing legal issue of whether Bond & Associates was the agent of the insurance company or the agent of Mr. Graue, or was anybody's agent, never even remotely approached Mr. Graue's conscious or subconscious mind. By the same token, I am fairly sure he did not read, much less even consider the disclaimers, notices and instructions affixed to and accompanying his insurance bill.

I am reasonably sure that when Mr. Graue left the office of Bond & Associates on January 8, having just paid his insurance premium of $102, he had an honest, gut feeling either that he had met the premium payment requirements for his insurance policy so that it was firmly in place for another year or that his policy was going to go into default the next day because his premium would not reach the insurance company's office in St. Louis as required. However, Doug Graue's testimony does not even cover this meeting, and the best evidence that Deanna Maclin's deposition is not determinative is the fact that both the majority opinion and the dissenting opinion argue convincingly that her version of what occurred on January 8 unequivocally supports the divergent positions of each of the respective opinions. From the scant evidence available, I cannot tell what Mr. Graue's honest expectation was, and therein lies the whole answer to the question of whether the fascinating legal theory of apparent authority will answer the question in this case.

Usually, when a case reaches the Missouri Supreme Court, the jury or the trial judge has answered factual questions such as this. Because apparent authority was not in the picture when this case was tried,

this Court must decide what the facts were regarding apparent authority. Mr. Graue, who relies upon apparent authority, has the burden of proof, i.e., the risk of non-persuasion. Having already observed that I am unable to discern his state of mind at the critical point when he left the office of Bond & Associates, plaintiff loses. I would join Judge Benton in refusing to affirm the trial court based on the theory of apparent authority.

I concur in Part III of Judge Benton's opinion. I would reverse the trial court for the reasons stated therein.