**AMERICAN FAMILY MUTUAL INSUR-ANCE COMPANY, a corporation, Respondent,**

v.

**Victor Daryl BACH et al., Appellants.**

No. 55715.

Supreme Court of Missouri, Division No. 1.

Sept. 20, 1971.

Motion for Rehearing or for Transfer to Court En Banc Denied Nov. 8, 1971.

Terence C. Porter, Columbia, for respondent; Porter & Cleaveland, Columbia, of counsel.

Larry M. Woods, Sapp, Woods, Dannov & Orr, Columbia, for appellants Earl Smith, Jr., Mary Lou Smith, Earlene Smith, Patricia Lee Smith, Paul Walter Smith, and Daniel Wallace Smith.

Ray Carleno, Carleno & Nick, Ferguson, for appellants Earl Smith, Sr., and Helen Smith.

Scott O. Wright, Brown, Wright & Willbrand, Columbia, for appellant Victor Daryl Bach.

PER CURIAM.

American Family Insurance Company brought this action in three counts: (I) to reform an automobile insurance policy so as to add an endorsement excluding Victor Daryl Bach from any coverage thereunder; (II) to enter a declaratory judgment that the policy as reformed affords no liability insurance coverage to Bach and that insurer has no duty to defend suits filed against Bach arising out of a certain automobile collision or to pay any judgment rendered against Bach in any such suit, and (III) in the alternative (if reformation be denied) for a declaratory judgment that the policy affords no liability coverage to Bach and insurer has no duty to defend or pay. The provoking cause of this litigation was a collision between an insured automobile driven by Bach (who was not named in the policy) and an automobile driven by Earl Smith, Sr., in which Mrs. Smith and other members of the Smith family were passengers. As a result of the collision several lawsuits were filed by the Smiths against Bach. These lawsuits are pending and undisposed of, awaiting the outcome of this litigation. Defendants in the instant suit are Victor Daryl Bach, Mr. and Mrs. Earl Smith, Sr., and six other members of the Smith family. Defendant Bach and all of the Smiths filed answers to each of the three counts of the petition setting up affirmative defenses, including waiver and estoppel, praying that the policy not be reformed as requested by insurer, and that the court declare that the policy covered Bach and that insurer must defend and pay thereunder. Additionally, the senior Smiths prayed that the policy be reformed to include Joanne Nichols Bach, wife of Victor Daryl Bach, as a named insured. Victor Daryl Bach also filed a counterclaim for $500 under the policy provision relating to medical payments.

Reformation to exclude Victor Daryl Bach from coverage was decreed under Count I. The nonliability of insurer under Count II to defend and pay judgments under the policy as reformed was declared. The noncoverage of Victor Daryl Bach under the policy and the nonliability of insurer to defend and pay judgments under the policy was declared. The court found the issues against Bach on his counterclaim. All defendants appealed.

Joanne Nichols, age 20, single, living at home with her parents, Mr. and Mrs. George Nichols on Route 5, Columbia, purchased an automobile in February, 1963 with the financial assistance of her father. The title issued in the name of Joanne Nichols. Mr. Nichols advised John Throckmorton, agent for the insurer, that his daughter was purchasing an automobile and needed insurance coverage and gave the agent the necessary data to fill out an application for insurance. The agent knew that Joanne was a minor. The agent thought that because of her minority Joanne could not be the title owner and, assuming that the title would issue in the name of Mr. Nichols, prepared an application in form for Mr. Nichols to be the insured, reciting that Mr. Nichols would be driving the automobile 40% of the time, his wife 30% and Joanne 30%. Mr. Nichols signed the form as applicant and Joanne signed a youthful driver pledge at the bottom of the form. The insurer issued the policy with Mr. Nichols as the named insured. The policy and premium notices were sent to Mr. Nichols. Joanne paid the premiums prior to her marriage.

Part I of the policy, providing protection against liability, under the section relating to "Persons Insured," provided coverage with respect to a non-owned automobile to the named insured and "any relative * * * provided his actual operation * * * thereof is with the permission of the owner or with the permission of the person in lawful possession thereof and is within the scope of such permission * * *."

Medical expense coverage was given to the named insured and each relative who sustains bodily injury caused by accident while occupying an automobile.

"Relative" was defined as a person related to the named insured who is a resident of the same household.

"Non-owned automobile" was defined as an automobile not owned by a named insured or any resident of the same household.

General Condition No. 8 provided as follows:

"8. Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued by the company to form a part of this policy."

From the time the policy was issued on February 26, 1963 until December 1, 1963 Joanne lived at the home of her parents. On the latter date she married Victor Daryl Bach, then 18 years old. The couple moved into a trailer near the home of Mr. and Mrs. Nichols on Route 5. In the spring of 1964 the Bachs moved to an an apartment on Clark Lane in Columbia.

On August 5, 1964 (22 days before expiration of the policy period) the insurer mailed the semi-annual premium notice to Mr. Nichols, who had never examined the policy closely, had paid little attention to premium notices, and thought the insurance was in Joanne's name. He noticed that the premium notice was in his name so he looked at the policy and for the first time learned that the policy was in his name. He called the agent, told him he did not know the policy was in his name and that he would like to have it changed over to Joanne's name. He called Joanne, telling her that he wanted her and Daryl to go to the agent and find out why the policy was written in his name instead of Joanne's. On August 10, 1964 Joanne and Daryl conferred with the agent at his office. They discussed the insurance coverage on the automobile. The Bachs told the agent that Daryl would be driving the automobile. The agent, believing that Daryl was not covered because not expressly listed as a driver, advised the Bachs that if Daryl was not added as a named driver and an additional premium paid there would be no coverage of Daryl. Semi-annual premiums under the policy as originally issued were $26.70. The semi-annual premium with Daryl added as a named driver would be $72.20. Daryl stated that this was too high; that he was not interested; that he had insurance coverage with another company and did not need the additional coverage offered. Daryl believed that he was covered by the American Family policy as originally issued and that the agent was trying to lead him to believe otherwise. Daryl intended to drive the car until the policy expired, and then was planning to change over to another insurance company. Joanne thought Daryl was covered by an insurance policy in effect on another car, so she did not feel it was important whether this policy covered him; she "really didn't go into details about it." Nothing was decided at the meeting; no decisions were reached with respect to what should be done about the policy; no policies, endorsements or exclusionary clauses were written. The Bachs indicated to the agent that they would think about it and let the agent know what they wanted to do. The agent told Daryl that if he changed his mind he could send the pre-

mium to the agent and he would "list him as a driver." Joanne had told the agent at the meeting that she wanted the policy changed to her name but this was never done. No endorsement or other change in the policy was made and no further action taken as a result of the conference. The agent, considering that there was no coverage of Daryl because he was not expressly listed as a driver, did not advise the insurer that Joanne had married Daryl and that Daryl was driving the car.

The insurer is a "direct writing" general insurance company. John Throckmorton is an exclusive insurance agent for the insurer. He does not issue exclusionary riders, although occasionally the insurer does issue such riders. These riders are issued from insurer's office and sent to the agent's office. The agent then notifies the insured about the rider. No exclusionary rider relating to Daryl was issued in this case.

After the meeting the Bachs at first decided to continue with the policy as written and when the policy period expired drop the insurance and take out a policy in a different company. The records, however, show that ten days after the meeting, on August 20, 1964, Joanne and Daryl paid and the insurer received a premium payment on the policy in question in the amount of $26.70. This action evidently was taken after Joanne had investigated costs and found that "she had a lot of coverage" and was "getting it so cheap."

On September 24, 1964, during the six-month coverage which the August 20 payment presumably paid for, Daryl, while driving the automobile in question, was involved in a head-on collision with a car driven by Earl Smith, Sr. in which a number of Smith's relatives were passengers. Daryl had permission from both Mr. Nichols and Joanne to use the automobile. Numerous lawsuits and claims by the Smiths were filed against Daryl. He referred these lawsuits and claims to the insurer, which assumed their defense under

a nonwaiver agreement with the named insured, reserving its right to contest the question of coverage. The insurer then brought this action, naming Daryl and all of the Smiths as defendants (but not naming the insured, Mr. Nichols, or the owner of the automobile, Joanne, as parties defendant).

The insurer paid the collision loss on the insured automobile under the policy in question, and its adjuster told Daryl that the company would pay $500 on his medical bills but the $500 was never paid. Bills in excess of $500 were submitted to the insurer by Daryl. Before the collision there was no notice from the insurer to the named insured that Daryl was not covered. After the collision the insurer sent Mr. Nichols a letter purporting to cancel the policy as of August 27, 1964. Enclosed was a refund check for $26.70 (the sum paid by Joanne and Daryl out of their joint funds to extend the coverage for six months beyond August 27, 1964).

Daryl reported the accident to the Safety Responsibility Unit of the Department of Revenue as required by law. The report named plaintiff insurer as Daryl's insurer. Under usual procedure the Unit mailed the SR–21 form to the insurer with instructions to return the form within 30 days if the policy was not in effect. Insurer did not return the form or deny coverage. The Smith-Bach litigation is pending without activity under an agreement that the full amount of the $20,000 coverage will be paid to the Smith family in the event this litigation is ultimately determined adversely to the insurer.

■■■ For the insurer to be entitled to reformation of this policy of insurance to exclude Daryl from liability coverage thereunder the burden was upon the insurer to show by clear, cogent, convincing evidence, beyond a preponderance of the evidence and so as to leave no room for reasonable doubt, that there was an agreement between the parties that Daryl would be specifically excluded from liability insur-

ance coverage while operating the insured automobile.[1] Helmkamp v. American Family Mutual Insurance Co., Mo.App., 407 S.W.2d 559 [9–12]. The insurer failed to meet and carry that burden of proof.

In the first place, the persons present at the meeting of August 10 had no authortity to bind the parties to the insurance contract to any such agreement. The evidence indicates that Mr. Throckmorton was a soliciting agent only. A soliciting agent has authority to take and forward to the insurer applications for insurance, deliver policies when issued by the insurer on such applications, and collect the first premium. See Bennett v. Royal Union Mut. Life Ins. Co., 232 Mo.App. 1027, 112 S.W.2d 134, 143 [10]; Cole v. Kansas City Fire & Marine Ins. Co., Mo. App., 254 S.W.2d 304, 307 [7]; Gibson v. Texas Prudential Ins. Co., 229 Mo.App. 867, 86 S.W.2d 400, 406. A soliciting agent does not have the authority of a general agent, who may accept risks, agree upon and settle the terms of insurance contracts, modify the terms of existing policies, issue new policies or renew old policies containing exclusionary clauses, or make modifying endorsements on existing or new policies. There is no evidence that Mr. Throckmorton had the powers of a general agent.

The other party to the contract of insurance, George J. Nichols, the named insured, was not present at the meeting at which the agreement is alleged to have been made and there is no evidence that the Bachs were authorized by him to agree to any change in the persons insured other than himself. The only policy change in which Mr. Nichols expressed any interest or concern was a change in the named insured from himself to his daughter. His authority to Joanne and Daryl was simply to see the agent and "find out why the policy was issued in his name instead of Joanne's."

In the second place, there is no evidence that the persons attending the August 10 meeting made the agreement alleged in the petition or that they came to terms on any agreement of any kind modifying or varying the terms of the original policy in any manner. The testimony of all three (Mr. Throckmorton, Daryl and Joanne) indicates unquestionably that they were not in agreement about the matter under discussion. The agent for the insurer stated that Daryl was not covered by the policy; stated what in his judgment had to be done in order for him to be provided coverage, what it would cost and what the consequences would be if it were not done. Joanne listened but did not commit herself. She did not consent or acquiesce in what Mr. Throckmorton said, nor did she agree to renewal of the policy with an exclusionary clause. She was not particularly concerned about it because she thought Daryl was covered by another policy. Daryl considered that he *was* covered by the policy and that the agent was trying to fool him. He plainly stated that he would continue to drive the automobile and was not interested in increasing the premium. The agent's suggestions were either rejected by Daryl or the whole matter taken under advisement, whichever way the testimony is interpreted. In either event there was no meeting of the minds or agreement by the Bachs that Daryl was not covered or that an exclusionary clause would be attached to the existing policy or that the renewal policy would contain such a clause. There was no agreement whatever about renewal. On the contrary, at the time of the meeting Daryl had in mind cancellation of the

---

1. Insurer's petition alleged: "18. That the insurance contract agreed upon by the plaintiff's agent, John W. Throckmorton, and the defendant Victor Daryl Bach and his wife, Jo Ann Bach, acting on behalf of the insured George J. Nichols, was to provide, that upon the payment of the sum of $26.70, the policy of insurance attached hereto and marked Exhibit 'A' would in all respects be placed in force as written with the exception that Victor Daryl Bach would be excluded from liability coverage thereunder."

policy upon expiration. Therefore, instead of there being clear, convincing evidence of a definite agreement, there is evidence of general disagreement between Mr. Throckmorton and the Bachs. Insurer effectively acknowledges this in its statement of facts that "No decision was reached at that conference about what should be done with the plaintiff's insurance policy." And at the end of the conference the agent, according to his testimony, told Daryl that "if he changed his mind, he could send the premium to [him] and [he] would list him as a driver," thereby clearly indicating that the matter was left undetermined and negating the fact of agreement.

The insurer's theory is that it was the intention of the parties that the insurance not cover Daryl without payment of an additional premium and that an exclusionary clause form a part of the policy, but that by mutual mistake of the parties the policy was continued in force in its original form without the issuance of an exclusionary clause attached thereto. (The issuance of such an endorsement would have been the orderly way to effect a change in the policy, and would have complied with the policy provision that the terms of the policy should not be changed "except by endorsement issued by the company to form a part of this policy [General Condition No. 8, supra].")

█ The insurer's agent had the authority and doubtless the duty to inform the insurer that Joanne had married and that her under-age husband was driving the automobile, and to suggest that then or upon renewal of the policy at the $26.70 rate the insurer issue an endorsement containing a clause excluding Joanne's husband from liability coverage. In paragraph 22 of its petition the insurer conceded that it and its agents and servants failed to take the necessary action to issue an endorsement containing the alleged agreement, and alleged that this failure was due either to inadvertence or mistake. This was a unilateral mistake on the part of the insurer and its agent. In his testimony Mr.

Throckmorton acknowledged that he did not advise his company of the situation and that Daryl was driving the automobile, and testified that in his judgment there was no coverage because Daryl was not expressly listed as a driver and he had informed the Bachs that there was no coverage until an additional premium was paid. This mistake on the part of the agent cannot be attributed to the named insured. In its brief the insurer asserted that "Due to inadvertence and mistake *on the part of the plaintiff and its agent Throckmorton,* formal execution of a written endorsement excluding Bach from coverage was not accomplished" (our emphasis, this language confirming our conclusion that the mistake was unilateral). The insurer, however, cites and quotes from authorities authorizing reformation of written instruments in cases of *mutual* mistake.

█ There is no evidence in this record to support the theory of mutual mistake. The only mistakes in evidence were the unilateral mistakes of insurer and its agent. As conceded, the agent with knowledge of the change in Joanne's marital status and that her under-age husband was driving the insured automobile, mistakenly failed to so notify the insurer. The insurer is bound by the mistake of a soliciting agent. See Western Cas. & Sur. Co. of Fort Scott v. Wunderlich, Mo.App., 447 S.W.2d 1, 3 [1]. The knowledge of the soliciting agent is implied to his principal, the insurer. Edwards v. Zahner, Mo.Sup., 395 S.W.2d 185 [5], and cases cited l. c. 190. With imputed knowledge that one of the drivers of the insured automobile was an under-age male the insurer mistakenly sent a premium notice to the named insured, billing him for $26.70, without referring to exclusions, and upon receipt of a remittance in that sum accepted and retained the payment and thereby continued the insurance in force under the terms and provisions of the original policy, without issuing any exclusionary endorsement. It may not be said on this record that the named insured, George J. Nichols, Joanne, or Daryl contributed to the mistakes made by the insurer

and its agent so as to suspend the coverage of Daryl as an insured relative. There was no agreement, intention, consent or acquiescence on their part to the agent's postulate that there would be no coverage of Daryl without an additional premium.

Accordingly, there was no basis upon which to reform the policy by adding an endorsement excluding Victor Daryl Bach from coverage thereunder and the court erred in its ruling.

Judgment reversed and cause remanded with directions to set aside the judgment of April 29, 1970 and enter a new judgment consistent with this opinion.

All of the Judges concur.