URBAN EXPANSION, INC., et al., Plaintiffs-Respondents,

v.

FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellant.

No. KCD 30253.

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Motion for Rehearing and/or Transfer Denied Dec. 31, 1979.

Application to Transfer Denied Feb. 11, 1980.

Paul H. Niewald, Niewald, Risjord & Waldeck, Kansas City, for defendant-appellant.

Norman O. Sanders, Sheridan, Sanders & Simpson, Robert Ernest Gould, Gould & Hickam, Kansas City, for plaintiffs-respondents.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

DIXON, Presiding Judge.

Defendant appeals from a trial court judgment denying defendant's counterclaim asserting a right to equitable reformation of an insurance contract. The underlying and substantial dispute is between General Accident Fire and Life Assurance Corporation and Fireman's Fund Insurance Company as to coverage for fire loss in an uncompleted apartment complex.

The issue presented is whether the trial court erred in finding that the defendant had failed to carry its burden of proving the mutual mistake necessary to support a claim for equitable reformation of its contract of insurance.

The plaintiffs in the case, other than General Accident Fire and Life Assurance Corporation, Ltd., are a group of entrepreneurs involved in the construction and operation of an apartment complex, utilizing as a vehicle a limited partnership. For convenience, these plaintiffs will be referred to as "Westowne." Fireman's Fund Insurance Company is the defendant and counterclaimant.

The plaintiffs brought suit against Fireman's Fund to declare its liability on a fire insurance contract. Fireman's Fund answered and counterclaimed for reformation of its policy. The plaintiffs then dismissed without prejudice the declaratory judgment action, and the case went to trial on the counterclaim for reformation. The reformation sought was to eliminate from the Fireman's Fund coverage the loss by fire to a portion of the Westowne complex.

Some of the factual background is completely without dispute. On October 23, 1972, a fire at the apartment construction site occurred. Eleven major buildings were involved in the whole complex. Three of these had been completed. As a result of the fire, several buildings were destroyed or damaged with a total agreed loss of $233,270.72. The buildings damaged in the fire were neither completed nor occupied. At the time of the loss, two insurance policies had been issued and were outstanding, ostensibly affording protection to the policy

owners for loss by fire. The limits of both of the policies were adequate to cover the loss. It is without dispute that the policy written by General Accident was a builder's risk or course of construction policy which, in effect, provided that the insurance would lapse upon completion of the construction and occupation of the premises unless prior consent had been obtained from the insurance company. No issue of prior consent is involved in this case.

The Fireman's Fund policy as written was on standard forms applicable to permanent insurance by the use of Apartment Form 11, a form used for insuring apartment buildings on a permanent basis. Apartment Form 11 does not purport to exclude coverage in the event the building is still under construction. When the policy was originally issued by Fireman's Fund, it contained a Form 17c, which provided builder's risk insurance. There is no question but what everyone involved in the Fireman's Fund policy, whether as agent or underwriter, was aware that most of the buildings in the project were not complete. After the policy was issued containing both the builder's risk coverage and the permanent coverage, the builder's risk insurance was removed from the Fireman's Fund policy by an endorsement. The endorsement removing the builder's risk coverage deleted from 17c and contained the following language:

"On apartment project (Blanket over all buildings)–600'N." of 152 Hwy., 71 Bypass and 152 Hwy., Liberty, Missouri."

After this endorsement, which was well before the fire, the Fireman's Fund policy thus read as a permanent form of insurance (Apartment Form 11), without exclusion respecting construction, and over all the buildings.

It is the position of Fireman's Fund that this coverage was a mutual mistake by Fireman's Fund and Westowne, and that the policy should be reformed to provide permanent coverage only as to completed buildings.

The trial court, by a written opinion, made findings of fact and conclusions of law contrary to the positions of Fireman's Fund. It found factually that the proof by Fireman's Fund was insufficient to show that there was a mistake common to both parties and a prior agreement between the parties different from the written agreement evidenced by the contract of insurance. Based on those factual findings, the trial court determined as a matter of law that Fireman's Fund was not entitled to reformation.

Initially, the respondent's brief moves to dismiss the appeal for violation of Rule 84.04(c) and 84.04(d). The respondent's brief contains extensive suggestions in support. By reply brief, Fireman's Fund has provided counter suggestions. Little purpose would be served in reviewing the alleged deficiencies of the statement of facts and the points on appeal since the reply brief has set forth in a single point the precise issue which could be gathered from the original brief by reading the points and the argument of Fireman's Fund together. Insofar as the complaint of the General Accident relates to the factual statement, the posture of this case has required a review of the entire transcript. The determination of the motion has therefore required the same review as that on the merits, and the motion will be overruled.

The thrust of the appeal centers upon the point set forth in Fireman's Fund's reply brief, that the trial court erred in denying reformation because there was substantial evidence of a mutual mistake and that, under the particular circumstances of the case, this court should make a separate determination of that evidentiary issue despite the ruling of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).[1]

The first matter to be resolved is the appellant's claim that this court should make separate findings of fact and conclu-

1. Fireman's Fund, in the reply brief, has abandoned its second point in the initial brief concerning the admission of evidence which was in total violation of Rule 84.04(d) and preserved nothing for review.

sions of law. Fireman's Fund asserts this should be done because there was a substantial delay between the taking of the evidence of Fireman's Fund and the taking of the evidence of General Accident and, further, a delay between the final taking of evidence and the trial court's opinion. Fireman's Fund says that this delay eliminates any need for deference to the trial court's findings of fact or the credibility issue involved in the case. What is suggested is a de novo review. By this argument, Fireman's Fund mistakes the thrust of *Murphy v. Carron, supra. Murphy v. Carron*, does not prohibit this court from making independent findings of fact and conclusions of law. It declares and announces the policy of this state with respect to the manner in which an appellate court should approach the question of whether or not independent findings of fact should be made. The duty of appellate courts in reviewing court tried cases *always* requires the appellate court to examine the transcript of the evidence and to determine whether the trial court's findings are supported by substantial evidence and are correct. What *Murphy v. Carron* provides is a standard for determination of those issues and, until the appellate court is convinced that the trial court findings of fact are wrong or not supported by substantial evidence, no duty or right to make independent findings arises. If, on the contrary, the appellate court determines that the findings are not supported by substantial evidence or is convinced that a wrong factual result has been reached, then the application of *Murphy v. Carron* requires independent findings of fact by the appellate court.[2] The manner in which the trial court receives the evidence, vis-a-vis the timing and interruptions in that evidence, may be a reason why a trial court errs in making findings of fact, but the existence of such interruptions in the taking of evidence cannot in and of itself constitute a reason for disregarding the trial court's findings. This court has no alternative to its examination of the evidence. It views as a whole the transcript presented pursuant to the standards of *Murphy v. Carron, supra,* and if the standards of that test require an independent determination of the facts, this court's duty as to a finding of facts arises from that examination of the whole record.

■ To narrow the recitation of the evidence necessary for disposition of this appeal, certain fundamental rules of law concerning the reformation of contracts will be stated. In order to be entitled to reformation of any written instrument, the proponent thereof must show by clear and convincing evidence that a mistake was made that was mutual and common to both parties to the instrument. It must appear that both parties did what neither intended to do. A mutual mistake presupposes a prior or preceding agreement between the parties, and this agreement must be shown. *American Family Mutual Insurance Company v. Bach*, 471 S.W.2d 474, 477–478 (Mo. 1971); *Allan v. Allan*, 364 S.W.2d 578, 581 (Mo.1963). The mistake must be made out by the clearest evidence and upon testimony entirely exact and satisfactory. *Grossman Wrecking Co. v. Bituminous Casualty Corp.*, 518 S.W.2d 719, 725 (Mo.App.1974).

■ Reformation of a contract will be ordered only upon mutual mistake of the parties which has produced a contract which neither intended. *Galemore v. Haley*, 471 S.W.2d 518 (Mo.App.1971). In order to prevail on the issue of reformation, it is necessary to show that the mistake was common to both parties and presupposes a preceding agreement between the parties which must of necessity be shown. *Allan v. Allan, supra.* In order for reformation to be decreed, the evidence of mistake must be clear, cogent and convincing and upon testimony entirely exact and satisfactory. *Webb v. St. Louis County Nat. Bank*, 551 S.W.2d 869 (Mo.App.1977). The high remedy of reformation is never granted on a probability or on a mere preponderance of evidence. *Galemore v. Haley, supra.*

2. Under the separate prong of the *Murphy v. Carron* test, the reviewing court may accept the factual findings and determine the trial court erroneously declared the law, or the reviewing court may redetermine the facts if necessary and redeclare the law.

None of these principles are at war with any of the abstract statements in Fireman's Fund's original brief. The abstract statements which constituted the points and authorities in the original brief are all correct statements of principle. The difficulty arises in the application of the fragments of principle to the facts of this case. For instance, the statement by Fireman's Fund's brief that the intent of the parties, if clearly shown, requires reformation, is only partially correct since no amount of subjective intent on the part of the parties to a contract can be a substitute for proof of a meeting of the minds of the parties with respect to the terms of specific agreement to which the existing agreement can be reformed.

Considering the posture of this case in the light of these rules of law, it is apparent that the fundamental question with respect to the findings of fact is whether or not the proof in this case by Fireman's Fund was clear, convincing and cogent that the parties had reached an agreement different than the agreement evidenced by Fireman's Fund's policy of insurance as issued. On that point, there is no question but what the evidence is not clear and convincing as to the agreement of the parties.

First, the witnesses who were connected with the underwriting department of Fireman's Fund testified unequivocally that they intended to issue permanent insurance and did not intend to issue a builder's risk or course of construction policy. At the same time, they also stated without qualification that they intended to charge a full premium covering all the buildings and did, in fact, charge and receive such a premium.

The witnesses who testified from one of the entities comprising the Westowne partnership, the Greenwich Group, did not specifically testify concerning any agreement with Fireman's Fund concerning a policy of insurance. They simply stated that they wished to avoid a "gap" in coverage and for that purpose had instructed one Sheehy to procure insurance sufficient to avoid the possibility of completed buildings being without insurance. These witnesses could have had no agreement with Fireman's Fund, for they never dealt with Fireman's Fund. They dealt only with their agent and their instructions to him were simply to avoid a gap in coverage. That agent, Sheehy, testified he did not intend to obtain builder's risk from Fireman's Fund, but his testimony is far from unequivocal as to exactly what it was he asked Fireman's Fund to provide. His evidence is further weakened by evidence coming from the agency which issued the General Accident policy that Sheehy had called and told them that Fireman's Fund was on the risk and the builder's risk policy could be cancelled. That testimony was confirmed by an officer of the Parsons Construction Company which had originally procured the builder's risk policy. The officer from Parsons who testified concerning this matter quite sensibly told his agent not to cancel the builder's risk until he had proof that another policy had been issued covering the risk.

The trial court's opinion has been examined in the light of the examination of the transcript and the evidence noted above. It must be concluded that the trial court had a clear understanding of the dispute and the evidence presented. The trial court's opinion refers to exact figures with respect to the loss, the names of the agencies involved in the issuance of the insurance, the forms under which the insurance was written and specifically refers to the evidence given by various witnesses, including Sheehy, all of which is amply and sufficiently supported by the transcript. The trial court's conclusion of fact, that the project owner, Westowne, intended for insurance coverage to be obtained from Fireman's Fund only on completed buildings was not supported by clear, cogent, and convincing evidence, is amply supported. The trial court's finding of fact that there was no evidence offered to show Fireman's Fund was mistaken as to the coverage written is supported by the testimony of the underwriters. The trial court's findings that the Fireman's Fund policy was written and delivered in accordance with the policy ordered is supported by direct evidence of that fact. The testimony that Fireman's Fund intended to insure all

buildings as though completed and to charge a premium accordingly amply supports that factual finding.

■ From what has been said, the trial court's conclusion of law that Fireman's Fund failed in its burden of proof to support a claim for reformation of the contract is obviously a correct application of the law concerning reformation. There being no error in the application of the law and the trial court's findings of fact being supported by substantial evidence, the judgment is affirmed.

All concur.