**PRESTIGE CASUALTY COMPANY,**
**Plaintiff-Appellant,**

v.

**Pearl M. MASHBURN, and Julie Ann Sigle, Administratrix of the Estate of Roger L. Sigle, Deceased, Defendants-Appellees.**

**No. 79–1031.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1979.

Decided Jan. 11, 1980.

James F. Groves, South Bend, Ind., for plaintiff-appellant.

Kenneth R. Tuel, Michigan City, Ind., for defendants-appellees.

Before PELL and TONE, Circuit Judges, and VAN DUSEN, Senior Circuit Judge.*

VAN DUSEN, Senior Circuit Judge.

This is an appeal from a judgment which denied Prestige Casualty Company's (Prestige) action for a declaration that it need not defend and/or indemnify the appellee, Pearl M. Mashburn, under the terms of her automobile liability insurance policy in a wrongful death action arising out of a fatal automobile accident. The trial court held that an alteration in Mashburn's policy, which resulted in the termination of coverage of Mashburn's car involved in the accident, had been the result of the negligence of Prestige's insurance agents. The court imputed that negligence to Prestige and

* The Honorable Francis L. Van Dusen, Senior Judge of the U. S. Court of Appeals for the Third Circuit, sitting by designation.

estopped Prestige from denying coverage under Mashburn's automobile insurance policy. We affirm on grounds to some extent different from those given by the district court.

On June 4, 1976, Mashburn purchased a liability insurance policy covering her 1967 Ford through George Payne, an insurance agent. Payne had submitted her application for coverage to the Ott and Heying Insurance Agency (Ott and Heying), which accepted the coverage and submitted the insurance contract to Prestige for issuance of a policy. During October of 1976, Mashburn and Payne discussed the addition to the existing policy of coverage for a 1970 Ford. Mashburn did not authorize the transfer of liability coverage from the 1967 Ford to any other vehicle. However, on October 29, 1976, Payne submitted a written memorandum to Ott and Heying requesting a transfer of coverage under the Mashburn policy from the 1967 Ford to the 1970 Ford. Ott and Heying subsequently wrote Prestige requesting this transfer of coverage.

Prestige responded to Ott and Heying's request for transfer of coverage by returning the letter with a stamp on it reading, "Endorsement Completed, Prestige Casualty Company, 11–2–76." Although Ott and Heying received this notice on November 7 or 8, 1976, neither such notice nor any other correspondence confirming the transfer was forwarded to Mashburn. Accordingly, no notice of the transfer of coverage from the 1967 Ford to the 1970 Ford was ever communicated to Mashburn, either in writing or orally, before November 11, 1976, when the fatal accident involving the 1967 Ford occurred.

Prestige contends that on the date of the accident, no coverage was afforded for the 1967 Ford because the transfer of coverage to the 1970 Ford had been completed when Prestige returned the stamped form to Ott and Heying. We disagree, as the failure of Prestige or its agents to deliver the endorsement to Mashburn prevented the transfer from taking place under the terms of the insurance policy.

■ The insurance policy printed by Prestige states under condition 14, entitled "Changes":

> ". . . nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy."

The language of this clause is straightforward. All parties agree that the description of the insured vehicle is a term of the policy. The policy clearly contemplates that an endorsement is a writing stating the insurance company's approval of a modification in the policy.[1] The only unclear word in the clause important to the resolution of this case is "issued." According to Webster's New International Dictionary of the English Language (2d ed. Unabridged, 1948), the definition of "issue" is the "act of sending out, or causing to go forth; delivery." In light of this definition, it is only logical to conclude that condition 14 of the policy requires that the issuance be to the party not making the endorsement, that is, to the insured or the insured's agent. See *American Family Mutual Insurance Co. v. Bach*, 471 S.W.2d 474, 479 (Mo.1971).

■ In our case, Prestige mailed the stamped form to Ott and Heying. The form was never forwarded by Ott and Heying to Mashburn. This action can only constitute an issuance to Mashburn if Ott and Heying was the agent of Mashburn for the purpose of receiving delivery of the endorsement. However, Ott and Heying was the agent of Prestige.

Prestige asserts that *Automobile Underwriters, Inc. v. Hitch*, 349 N.E.2d 271, 276 (Ind.App.1976), requires this court to reverse the district court's holding that Ott and Heying was the agent of Prestige. However, the *Hitch* case is factually distinguishable from the case at bar. In *Hitch*, the agreement between the insurance agency and the insurer specified that the insurance agency was an independent contractor. Additionally, the insurance agency represented several different insurance compa-

---

1. On page 3 the policy directs parties to the agreement to "attach endorsements here."

nies. Relying on these facts, the court held that the insurance agency was a "broker" and, therefore, the agent of the insured. Although the same two facts exist in the case at bar, other factors are present here which distinguish the cases. The Agency Agreement between Ott and Heying and Prestige provided that:

"[T]he Agency can solicit, receipt, and accept applications and proposals for insurance, endorsements, modifications, or other evidences of agreements of insurance; further the Agency can review, assess, and evaluate prospective risks, and where such risks are determined to be in the best interest of Prestige submit applications to Prestige Casualty Company for the purposes of the issuance of an insurance policy.

"[T]he Agency can collect, receive, and receipt for premiums on all policies solicited by the Agency.

.     .     .     .     .

"[T]he Agency shall comply with Prestige Casualty Company's rules and regulations governing the Agency's operations, and the Agency must strictly comply with all instructions from Prestige, and further the Agency must use those instructions only in the interest of Prestige Casualty Company.

"[T]he Agency has binding authority with Prestige Casualty Company."

This last factor is particularly important in determining agency and, so far as the *Hitch* opinion shows, was not present in that case. Appleman states that the proper test for determining if an insurance middleman is the agent of the insurer

"  .   .   .   is whether or not the agent has the power to bind the insurer by his conduct of insurance, or to issue policies on his own initiative, or to accept risks, and if the agent has actual authority to do these things, he is a general agent [of the insurer]; if he cannot place coverage in effect, but can merely initiate negotiations therefor, he is not a general agent." 16 Appleman, *Insurance Law and Practice*, § 8691 (1968).[2]

Even assuming that in *Hitch* the insurance agency had power to bind the insurer, that case is distinguishable. It decided only that the insurance agency's negligence in failing to obtain sufficient liability insurance for the insured was not attributable, on an agency theory, to the insurer. It did not decide that the insurance agency is not an agent of the insurer for any purpose, and such a conclusion would be plainly indefensible in the presence of an agency arrangement such as the one before us in this case. The Ott and Heying insurance agency, designated Prestige's general agent, was an agent of the insurer for many purposes, including binding Prestige to a contract of insurance and collecting premiums on policies issued by Prestige. Ott and Heying even agreed to act, in its dealings with Prestige, "in the interest of Prestige." We think that in view of this relationship and the fact that the insurer chose the means of delivering the endorsement after contracting with the insured to make the controlling event the delivery to the insured, the general agent was the agent of the insurer for purposes of delivering the endorsement.

Accordingly, Prestige sent the endorsement to its own agent, and it never "issued" the endorsement to the insured as required under condition 14 of the insurance contract. It follows that the termination did not take place, and the 1967 Ford remained the insured vehicle at the date of the accident.[3]

2. As a general agent is not a broker, I.C. 27–1–15–1(d) Acts 1935, Ch. 162 is not applicable to this situation.

3. This interpretation of clause 14 of the policy does not mean that a change of a term which expands the risk of the insurer can only take effect upon the delivery of an endorsement to the insured or the insured's agent. For example, when the general agent exercises its authority to bind the insurer immediately to an expanded risk, and the insured has acted in reliance upon the general agent's authority to bind, the insurer would presumably be estopped from contending. that coverage is not immediate but is delayed until delivery of the endorsement to the policy. However, in this case, as the insured is the beneficiary of the

The district court judgment will be affirmed.

clause with regard to the termination of coverage of the 1967 Ford and as she did not waive its protection, the clause must be given full effect and the attempted transfer must be held to be unsuccessful.