**Dale KOPFF, Appellant,**

v.

**ECONOMY RADIATOR SERVICE and
Northern Insurance, Respondents.**

No. 59586.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 25, 1992.

**450**

David Eric Sowers, Elaine Bensavage, Bernard W. Weitzman, St. Louis, for appellant.

David C. Godfrey, Clayton, Joseph L. Leritz, Nancy Shelton, St. Louis, for respondents.

1. In one exhibit, the latter building is described

SATZ, Judge.

This is a breach of contract action. It is based upon an insurance policy covering two buildings owned by plaintiff, Dale Kopff: a masonry/brick, four family apartment building at 212 Vest Avenue and a single level, masonry, commercial building at 26 Meramec Station Road.[1]

In August, 1986, the building at 26 Meramec Station Road burned down. Defendant, Northern Insurance Company of New York, the insurer of the building, paid plaintiff $35,000.00, the policy limits according to defendant. In one count of a three count petition, plaintiff alleged that it was owed $57,837.70 rather than $35,000.00 and that defendant had breached its insurance contract. Defendant counterclaimed, seeking reformation of the contract to change the policy coverage limits on 26 Meramec Station Road to $35,000.00 rather than the $63,800.00 which appeared in the contract and to change the coverage limits on 212 Vest Avenue, another of plaintiff's commercial buildings covered by the policy, to $63,800.00 rather than the $35,000.00 which appeared in the contract.

The trial court tried plaintiff's claim and defendant's counterclaim without a jury. The court reformed the insurance contract as requested by defendant and dismissed plaintiff's claim with prejudice. The court also found no just reason for the delay of an appeal of its judgment.

Plaintiff appealed. We affirm.

### Facts

■ In this court-tried case, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc.1976). Of equal importance, we defer to the trial court's resolution of credibility, Rule 73.-01(c)(2), and consider only those facts and inferences favorable to the prevailing party. *Slay Warehousing Co., Inc. v. Leggett,* 762 S.W.2d 63, 64 (Mo.App.1988).

as "2–story liquor store 1st/Off. 2nd".

In 1985, plaintiff, through his insurance broker Mr. Thomas Luepke, applied for insurance coverage with defendant for five commercial properties owned by plaintiff. Plaintiff had placed the bulk of his insurance through Mr. Luepke since 1981. The application requested coverage for a term beginning September 1, 1985 and ending September 1, 1986. Mr. Luepke attached to the application a copy of a form labeled "MP 1205", entitled "Supplemental Declarations Endorsement", which we will refer to as the "brokerage sheet". This brokerage sheet listed the five commercial properties to be insured, their addresses, the occupancy of the building, and the limits of liability, among other things. Location number 3 was listed as 212 Vest Avenue, and described as a four-family dwelling, with a requested liability limit of $63,800. Location number 4 was listed as 26 Meramec Station Road, and described as a "Merc. & Apt." building, with a requested liability limit of $35,000.

There was, however, an inconsistency between the application Mr. Luepke filled out and sent to defendant and the attached brokerage sheet. On the application, in the "location information" section, Mr. Luepke listed location number 3 as 26 Meramec Station Road and location number 4 as 212 Vest Avenue. Under the "property section" of the application, Mr. Luepke made a notation to "see attached," referring to the attached brokerage sheet for the rest of the information for the five commercial properties.

Defendant issued an insurance policy to plaintiff covering the five commercial properties from September 1, 1985 to September 1, 1986. On the policy, under the heading "Section 1—Property Coverage, Limit of Liability," the notation "see MP 1205" was typed. The next page of the policy is labeled "MP 1205," and, on that page, defendant listed location number 3 as 26 Meramec Station Road, a four-family apartment building, with a liability limit of $63,800, and location number 4 as 212 Vest Avenue, a mercantile building with a liability limit of $35,000. The following chart compares the information regarding these two properties as shown in the insurance application, the brokerage sheet attached to the application and the insurance policy issued.

### Insurance Application

| Loc. 3 | 26 Meramec Station Rd. | 4 family dwelling | |
| Loc. 4 | 212 Vest Avenue | 2 story liquor store/office | |

### Brokerage Sheet

| Loc. 3 | 212 Vest Avenue | 4 family dwelling | $63,800 |
| Loc. 4 | 26 Meramec Station Rd. | Merc./Apt. Bldg. | $35,000 |

### Insurance Policy

| Loc. 3 | 26 Meramec Station Rd. | 4–family apt. | $63,800 |
| Loc. 4 | 212 Vest Ave. | Merc. | $35,000 |

As previously noted, however, the building at 212 Vest is a masonry/brick four-family apartment; the building at 26 Meramec Station Road was a one story masonry building, occupied by merchants.

In August of 1986, the building at 26 Meramec Station Road burned down. After the fire, Mr. Luepke noticed that the limit on liability in the policy was $63,800. He then notified defendant that "two of the building and rental values have been transposed", and the liability limit for 26 Meramec Station Road should be $35,000 and for 212 Vest Avenue $63,800. Mr. Luepke also

notified plaintiff of the discrepancy, who was unaware of the problem because he had not read the policy since receiving it.

Plaintiff received payment from defendant of $35,00.00 on his claim for $57,-837.70 in damages he contended he incurred from the fire. After defendant refused to pay plaintiff the balance of his asserted claim, plaintiff sued defendant for breach of contract. Defendant counterclaimed for reformation of the contract.

In its Findings of Fact and Conclusions of Law in favor of defendant, the Court found there was a mutual mistake by the parties and, on that ground, reformed the insurance contract to reflect liability limits of $35,000.00 on 26 Meramec Station Road, the single level commercial building, and $63,800 on 212 Vest Avenue, the four family apartment building. On appeal, plaintiff challenges these findings on three grounds: (1) if a mistake were made, it was unilateral and did not involve the underlying agreement between the parties; (2) even if there were a mutual mistake, defendant suffered no loss because the premiums were commensurate with the risks insured; and (3) equity rarely allows reformation to an insurer after a claim has been filed if it will result in the denial of coverage.

### Mistake

A court may reform a written contract when the writing evidencing the contract fails to correctly reflect the agreement. The party seeking reformation must show by clear and convincing evidence that a mistake was made that was both mutual and common to both parties, and it must appear that both parties did what neither intended to do. *Urban Expansion, Inc. v. Fireman's Fund Ins. Co.*, 592 S.W.2d 239, 242 (Mo.App.1979). The party must show the written contract does not accurately set forth the terms of the agreement actually made, or does not incorporate the true prior intentions of the parties. *Moreland v. State Farm Fire and Casualty Co.*, 662 S.W.2d 556, 561 (Mo.App.1983); Restatement (Second) of Contracts § 155 (1981). In contrast, a unilateral mistake is a mistake on the part of only one of the parties, and a unilateral mistake alone is not an adequate basis for reformation. *Sheinbein*

*v. The First Boston Corp.*, 670 S.W.2d 872, 876 (Mo.App.1984). Thus, the nature of the mistake and whether there was a prior agreement are the primary factual issues in determining whether reformation is appropriate.

Prior opinions of our court provide some guidance in distinguishing between unilateral and mutual mistakes. In *Cameron State Bank v. Sloan*, 559 S.W.2d 564 (Mo.App.1977), the plaintiff bank mistakenly released a deed and canceled a note which the bank had incorrectly marked as paid. The bank sought reformation to set aside the cancellation and release on the grounds of mistake. The appellate court affirmed the trial court's action voiding the cancellation of the note and release of the deed of trust, holding that the mistake was mutual because both parties acted upon the erroneous assumption that the note had been paid. *Id.* at 568.

Similarly, in *Moreland v. State Farm Fire and Casualty Co., supra*, 662 S.W.2d 556, both parties were found to have intended to insure a particular dwelling, but an error in the legal description in the policy omitted it. The appellate court affirmed the trial court's reformation of the insurance policy to reflect the parties' intentions to cover the dwelling. *Id.* at 563.

Unilateral mistakes by the insurer and its agent, rather than mutual mistakes, were found in *American Family Mutual Insurance Co. v. Bach*, 471 S.W.2d 474 (Mo.1971). The court held the insurer seeking reformation had failed to establish an agreement with the insured to exclude the son-in-law of the named insured from automotive insurance coverage. *Id.* at 477–478. Rather, the court found evidence of general disagreement. *Id.* at 478. The insurer's agent had failed to inform the insurer that the daughter of the named insured had married and that her under-age husband was driving the automobile covered by the policy. The insurer's mistake was its failure to issue an endorsement excluding the son-in-law from coverage.

In the present case, the trial court found that, when defendant prepared the insurance policy, a clerical error was made

and the coverage limits for the two properties were transposed. The policy as issued, the court found, was the result of a mutual mistake and did not reflect the intentions of both plaintiff and defendant to insure 26 Meramec Station Road up to $35,000 of coverage and 212 Vest Avenue up to $63,-800. There is ample evidence to support these findings.

Immediately prior to obtaining the policy in question, plaintiff had obtained two separate, successive policies, covering the two buildings in question, from an insurer other than defendant. Those policies provided coverage of $35,000 on 26 Meramec Station Road and coverage of $63,800.00 on 212 Vest Avenue. The brokerage sheet attached to the application for coverage sent to defendant by Mr. Luepke requested those same coverage levels. The inconsistency in location number of the two properties on the face of the application and on the attached brokerage sheet supports defendant's contention that a transposition occurred when defendant prepared the MP 1205 form which was attached to the policy issued.

This transposition produced the unintended result of establishing a coverage limit of $63,800 for 26 Meramec Station Road and $35,000 for 212 Vest Avenue. Thus, the contract of insurance did not reflect the underlying agreement. Plaintiff incorrectly filled out the application believing he had sent defendant the correct information; defendant relied on that information, believing it was correct. Plaintiff and defendant were mutually mistaken as to the coverage limits shown in the policy issued by defendant, both assuming the limits were the same as those in the application. The contract did what neither intended it to do. Reformation was appropriate so that the policy accurately reflected the underlying agreement.

■■■ Relevant to this issue, plaintiff also contends that the court's admission into evidence of the two prior policies obtained from a different insurer and of the application for insurance here was a violation of the parol evidence rule. The insurance policy issued by defendant, plaintiff contends, was the complete and final agreement between him and defendant, and,

therefore, plaintiff contends, parol evidence varying, modifying or contradicting the issued policy was inadmissible. We disagree.

Parol evidence is admissible in reformation actions to establish the fact of mutual mistake, the nature of the mistake and how the writing should be reformed to conform to the intention of the parties. *See Duenke v. Brummett*, 801 S.W.2d 759, 766 (Mo.App.1991). Indeed, plaintiff's cited case states that the parol evidence rule is applicable only "in the absence of fraud, accident, or mistake". *Hartford Accident & Indemnity Co. v. Farmington Auction, Inc.*, 356 S.W.2d 512, 520 (Mo.App.1962).

■■■ Plaintiff also argues that a contract never existed that provided for only $35,000.00 coverage on the property at 26 Meramec Station Road because there was never a meeting of the minds as to these terms. Plaintiff argues that his application was an offer, and the policy defendant eventually issued was actually a counter offer. A contract was never formed, plaintiff argues, until he accepted this counter offer, the terms of which became the basis of the agreement between the two parties. We disagree.

Normally, an application for insurance is an offer by the applicant for a contract of insurance. *Soutiea v. American National Insurance Co.*, 595 S.W.2d 467, 470 (Mo. App.1980). If the insurer proposes coverage terms which vary from the application, then the policy may be deemed a counter offer. *The Hartford Accident and Indemnity Company v. Farmington Auction, supra*, 356 S.W.2d at 518–19. The evidence here, however, does not establish that defendant ever intended to make a counter offer. Rather, the difference in coverage for the two properties between the application and the policy was the result of clerical error. To be entitled to reformation, all a party need show is that the parties intended to agree to a particular result by the instrument but the instrument as executed was insufficient to effectuate their intention. *St. Louis County National Bank v. Maryland Casualty Company*, 564 S.W.2d 920, 924 (Mo.App.

1978). Here, evidence showed that the policy as issued did not accomplish the intention of plaintiff and defendant to insure 26 Meramec Station Road at a coverage level of $35,000 and 212 Vest Avenue at a coverage level of $63,800.

### Affirmative Defenses

■ Plaintiff raised two intertwined affirmative defenses to defendant's counterclaim for reformation—laches and detrimental reliance. The trial court did not make express findings of fact and conclusions of law regarding these affirmative defenses. However, the trial court implicitly ruled that, although pleaded, they were not applicable. *See Mississippi–Fox River Drainage Dist. No. 2 of Clark County v. Plenge,* 735 S.W.2d 748, 755 (Mo.App.1987). Further, all fact issues without specific findings in the court's order "shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2); *Safeco Insurance Co. of America v. Stone & Sons, Inc.,* 822 S.W.2d 565, 567 (Mo.App. 1992).

■ The equitable doctrine of laches will bar a claim if there has been unreasonable delay in pursuing it and the opposing party has been prejudiced thereby. *Mississippi–Fox River Drainage Dist. No. 2 v. Plenge, supra,* 735 S.W.2d at 754. Plaintiff contends that defendant had a duty to investigate, within a reasonable period of time, whether a mutual mistake existed, and, had defendant done so, plaintiff contends, the mistake could have been corrected without injury to either party. With the mistake discovered by defendant, plaintiff contends, he would have had the option of having his policy reflect the policy limits shown in the policy or obtaining additional insurance. Plaintiff contends the delay prejudiced him because it resulted in the denial of coverage, and reformation should therefore be barred. We disagree.

Plaintiff has received $35,000, which the evidence shows is the amount for which he intended to insure the building. The reformation here merely resulted in the denial of additional coverage neither party intended. Even assuming defendant were negligent in the preparation of the policy and in not discovering the transposition, plaintiff also was at fault. Plaintiff's agent filled out the insurance application incorrectly, and attached the brokerage sheet to it which contained information conflicting with that in the application. Plaintiff also failed to review the application until after the fire had occurred.

■ Moreover, negligence on the part of one party does not preclude a finding of mutual mistake, nor should negligence permit unconscionable advantage to another party when there has been no change in position in reliance thereon. *Cameron State Bank, supra,* 559 S.W.2d at 567–68; *Mahaffey v. Kwan,* 659 S.W.2d 562, 565 (Mo.App.1983); *see, e.g., Kimble v. Worth County R–III Bd. of Education,* 669 S.W.2d 949, 954 (Mo.App.1984). Plaintiff fails to demonstrate how he detrimentally relied on the coverage limit shown in the insurance policy. The evidence showed that neither plaintiff nor Mr. Luepke were even aware that the policy provided a $63,-800 coverage level on 26 Meramec Station Road until after the fire.

### Premiums

■ Plaintiff argues that, since he paid premiums reflecting $63,800 of coverage on 26 Meramec Station Road, he is entitled to recover up to that amount. Moreover, plaintiff contends, defendant received the "benefit of the bargain" because defendant received the correct premium for the contract as issued, and the amount of premium, as it relates to the risk covered, is of prime importance in determining whether an insurance contract should be reformed.

The cases cited by plaintiff are clearly distinguishable from the present case. In *Berry v. Continental Life Ins. Co. of Missouri,* 33 S.W.2d 1016 (Mo.App.1931), the court reformed the benefits of a life policy from $2,000.00 to $952.00, because, the court said, the $63.00 per year premium was clearly inadequate for the 20 year payment life policy to provide a payment of $2,000.00; and, the court said, the plaintiff policy holder should have known this. In *Grossman Wrecking Co. v. Bituminous Casualty Corp.,* 518 S.W.2d 719 (Mo.App. 1974), the insurer was denied reformation

not only because of the premiums charged, but because endorsements changing the policy in the manner sought by the insured through reformation had been sent to the insured, thus notifying him of the alteration, and, in addition, an increased premium was charged specifically identifiable to that particular change.

Here, had the coverage been as requested by plaintiff on all five of his properties, his premiums would have been $11.00 greater. Thus, the premiums he paid for this coverage were actually lower than they should have been. There can be no unjust enrichment if, by reformation, both parties receive only what they intended to obtain. Indeed, to allow plaintiff the benefit of a bargain neither party ever intended to make may well constitute unjust enrichment.

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.